2000 ND 183

Kevin Lowell ANDERSON and Kaylen Marie Resler, a minor child by and through her guardian ad litem, Dee Larson, Plaintiffs and Appellees,

v.

Marsha RESLER, Defendant and Appellant.

No. 990254.

Supreme Court of North Dakota.

Oct. 26, 2000.

Leslie Johnson Aldrich, Johnson Law Office, Fargo, for plaintiffs and appellees.

Alan J. Sheppard, Fargo, for defendant and appellant.

MARING, Justice.

[¶ 1] Marsha Resler (Resler) appealed from a judgment changing custody of Resler's daughter from Resler to the child's father, Kevin Anderson (Anderson). We hold the court's finding there has been a substantial change of circumstances compelling a change of custody is not clearly erroneous, and we affirm.

I

[¶ 2] Resler and Anderson were never married, but together they conceived a daughter, who was born November 29, 1992. In November 1994, a judgment was entered declaring Anderson to be the father, awarding custody to Resler with reasonable visitation for Anderson, and ordering Anderson to pay child support of $207 per month and arrearages in the amount of $2,000. The judgment was subsequently amended to establish a more specific visitation schedule and to increase the child support award.

[¶ 3] Anderson is 29 years old and employed as a foreman supervisor for a roofing company. He is also employed with the North Dakota National Guard. Anderson is married and resides in Fargo with his wife Kim, and their daughter, Olivia. Resler is 28 years old and is employed full-time at Meritcare Hospital in Fargo. She is unmarried and resides with her parents in Davenport. She has a son but she is not married to the boy's father, and neither the boy nor his father are parties to these proceedings.

[¶ 4] In October 1998, Anderson filed several motions requesting the court to find Resler in contempt for denial of visitation and requesting the court to change custody of their daughter from Resler to Anderson. Anderson also requested the court to appoint a guardian ad litem to represent the child's best interests, and the court appointed Dee Larson as guardian ad litem for that purpose. On December 7, 1998, the court entered a temporary order directing the guardian ad litem to conduct a custody study, directing visitations to occur through a local visitation program called Rainbow Bridge, and ordering the parties to "cooperate with the scheduling and requirements of Rainbow Bridge." The court directed the parties to neither "undermine the other parent or speak poorly of the other parent in front of the child." The court delayed a ruling on the motions regarding contempt and change of custody until the guardian ad litem's report was completed.

[¶ 5] On April 12, 1999, the court entered an order holding Resler in contempt of court, predicated upon the following findings of fact:

[T]here is no evidence of abuse or neglect regarding [the child] that would give reason for denial of visitation.

. . . .

[Resler] was to cooperate with scheduling and the use of Rainbow Bridge, and it was her direct course of conduct at Rainbow Bridge and her abusive behavior that caused the termination of services from Rainbow Bridge, in direct violation of this Court's Order.

. . . .

[Resler] has also failed to provide reasonable telephone contact. In fact, she put a block on her phone and there was a block placed on the phone of her parents.

The court ordered Resler incarcerated in the Cass County jail for 30 days for her contempt of the court's order and informed Resler she could purge herself and avoid the incarceration by strict compliance with the court's order and by allowing visitation. The court ordered facilitation of visitation by the Fargo Police Department, directing Resler to leave the child with the police at 5:50 p.m. and Anderson to pick up the child at 6:00 p.m. on visitation dates.

[¶ 6] A trial was held in June 1999 on the change-of-custody request, after which the trial court made the following relevant findings:

[T]he minor child ... appears to be basically a normal happy child having formed strong bonds of attachment for both parents.

[T]here exists between the parents and minor child love, affection, and emotional ties.

[T]he parents have the capacity and disposition to give the child love, affection, and guidance and to continue the education of the child.

[T]he parents have the disposition to provide the child with food, clothing, medical care, and ... other material needs.

[T]he behavior and attitudes of [Resler] make the minor child's continued healthy relationship with [Anderson] difficult if not unlikely.

. . . .

[Resler] during the course of the last two years has engaged in conduct either intentionally or subconsciously that [has] totally frustrated the visitation rights of [Anderson].

[Resler] throughout the course of these proceedings has accused [Anderson] of intoxication, injury to the child while in his custody, inappropriate and offensive comments of a sexual nature, letters written explicitly describing having sex with [Resler], telephone calls with intent to harass, and threats of physical abuse, none of which allegations have in any-

way been substantiated or corroborated.... [Resler] has in particular made the exchange of the child for visitation purposes so difficult that recent exchanges for visitation purposes have occurred at the Fargo Police Department and has made telephone contact concerning visitation an impossibility.

. . . .

[I]n spite of attempted remedial measures employed both by the parties and the Court visitation continues to be frustrated by [Resler's] conduct.

. . . .

This Court is unable at this stage of these proceedings to fashion a visitation schedule on behalf of [Anderson] that would assure peaceful exchanges and the visitation rights of [Anderson].

. . . .

There is a significant need for [the child] to have a continued healthy relationship with [Anderson], which [Resler] does not or will not recognize.

. . . .

[Resler] has been very uncooperative, not only with the guardian ad litem, but with the Andersons, this Court and other service agencies.... Resler's uncooperativeness also goes to Rainbow Bridge, the visitation exchange center, where she sabotaged their efforts in having peaceful visitation exchanges by combative and angry behavior which caused the parties to be terminated from services from Rainbow Bridge Exchange Center in March of 1999. The Court tried to fashion a clear, specific and fair visitation schedule without success. The Court warned [Resler] that continued visitation problems could mean a change of custody or jail. The warning went unheeded.

Based upon these findings of fact, the trial court made the following conclusions:

[T]here has been a significant change in the circumstances of the parents and the minor child to compel in the child's best interest a change of custody.

[W]ithout a change of custody of the minor child of the parties, the continuity of the parent/child relationship between [Anderson] and the minor child is unlikely.

[A] change of custody would not have a significant negative impact upon the child and would be in the best interest of the child.

[¶ 7] The court entered an amended judgment awarding Anderson custody with substantial visitation for Resler. The court also ordered Resler to pay child support of $228.50 per month. Resler appealed.

## II

[¶ 8] Resler has raised numerous issues on appeal. She first contends the trial court's finding there has been a significant change of circumstances compelling a change of custody is clearly erroneous. In 1997, the legislature codified this Court's two-step approach for deciding a change of custody request. *See Holtz v. Holtz*, 1999 ND 105, ¶¶ 9–10, 595 N.W.2d 1, citing *Hill v. Weber*, 1999 ND 74, ¶ 9, 592 N.W.2d 585. Section 14–09–06.6(6), N.D.C.C., provides:

6. The court may modify a prior custody order after the two-year period following the date of entry of an order establishing custody if the court finds:

   a. On the basis of facts that have arisen since the prior order or which were unknown to the court at the time of the prior order, a material change has occurred in the circumstances of the child or the parties; and

   b. The modification is necessary to serve the best interest of the child.

Under this codification the court, in deciding whether to change custody, must consider whether there has been a significant change of circumstances since the original custody decree, and, if so, whether the change requires the court to change custody to serve the best interest of the child. *Holtz*, at ¶ 10. The party seeking modification of a custody order bears the burden of showing a change of custody is required, and the trial court's decision on the issue is a finding of fact subject to the clearly erroneous standard of review. *Hendrickson v. Hendrickson*, 2000 ND 1, ¶ 16, 603 N.W.2d 896. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if it is clear to the reviewing court that a mistake has been made. *Id.*

[¶ 9] In *Blotske v. Leidholm*, 487 N.W.2d 607, 609 (N.D.1992), this Court reversed a trial court's decision to change custody of the parties' daughter from her mother to her father, emphasizing there is an aversion to changing the custody of a happy child who has been living with one parent for a substantial time. When the request for a change of custody is primarily predicated upon the custodial parent's frustration of the noncustodial parent's visitation rights, the court must act with restraint and caution:

Visitation between a child and her noncustodial parent is presumed to be in the best interests of the child. Visitation is not only a privilege of the noncustodial parent, but also a right of the child. Only when visitation "is likely to endanger the child's physical or emotional health," may it be withheld.

Having recognized and acknowledged the importance of the noncustodial parent's visitation privilege, we have also emphasized that frustration of visitation does not alone constitute a sufficient change in circumstances to warrant a change in custody. Before visitation problems justify changing custody, there must be a finding that the visitation problems had worked against the child's best interests. In this case, while the district court found that [the mother's] efforts to frustrate visitation, in effect, deprived [the child] of contact with loving family members, that deprivation is

better remedied at first by resort to a more rigid visitation schedule, rather than a change of custody.

*Blotske*, at 610 (citations omitted).

[¶ 10] In *Hendrickson v. Hendrickson*, 1999 ND 37, ¶ 13, 590 N.W.2d 220, this Court again recognized a change of custody is a drastic measure in resolving visitation conflicts:

> Although, we recognize methods other than a change of custody should be used initially to remedy a parent's misbehavior, we also recognize that, after exhausting other remedies, a change in custody may be the only method to correct the damage of a particularly stubborn and defiant custodial parent. If the alternative remedies fail, the district court should consider a change of custody.

(Citation omitted.) In upholding a change of custody to the father where the mother had exhibited a persistent and willful interference with the father's visitation rights and had attempted to alienate the children from the father, this Court in *Hendrickson v. Hendrickson*, 2000 ND 1, ¶ 18, 603 N.W.2d 896, reiterated and further explained the process for deciding a change of custody request where frustration of visitation is the primary allegation of wrongdoing:

> In *Blotske v. Leidholm*, we stated "frustration of visitation does not alone constitute a sufficient change in circumstances to warrant a change in custody," and a court should first resort to a more rigid visitation schedule, rather than change custody. 487 N.W.2d 607, 610 (N.D.1992). However, we also explained visitation problems may justify a change in custody when a court finds such problems have worked against a child's best interests. *Id.* In addition, in *Hendrickson II*, we stated that, though other methods should be used initially to remedy misbehavior by a parent, "after exhausting other remedies, a change in custody may be the only method to correct the damage of a particularly stub-

born and defiant custodial parent." 1999 ND 37, ¶ 13, 590 N.W.2d 220. Finally, we note the Legislature has expressly recognized frustration of visitation may require a change of custody. Under N.D.C.C. § 14–09–06.6(5), a trial court may not change custody within two years after the date of entry of a custody order. This time limit does not apply, however, if the trial court finds both that a modification is necessary to serve the best interest of the child and also that there has been a "persistent and willful denial or interference with visitation." N.D.C.C. § 14–09–06.6(5)(a).

[¶ 11] In a change of custody proceeding, the best interests of the child must be measured against the backdrop of the stability of the child's relationship with the custodial parent. *Blotske*, 487 N.W.2d at 610. The important factor in weighing stability is the stability of the child's relationship with the custodial parent. *Id.* at 610–11. However, notwithstanding a happy normal child with strong bonds of attachment to the custodial parent, egregious violations of specific court ordered visitation, evidence of an intransigent attitude against visitation rights and alienating behavior can weigh against the child's best interests.

[¶ 12] In this case, the trial court found Resler had, for the past two years, totally frustrated Anderson's visitation rights with their daughter. The trial court found Resler simply "will not recognize" that Anderson and the child have a right to a father and daughter relationship. The record evidence shows Resler has repeatedly denied visitation privileges to Anderson during these formative years of the child's life. Resler has told others her specific intent is to terminate Anderson's rights as a parent to the girl. There is also evidence Resler has attempted to alienate the child's affection for Anderson. During more than one phone conversation between the girl and Anderson, she was coached to say such things as, "I don't like

you anymore," "you are a bad daddy," and "pay your support."

[¶ 13] The court attempted various remedies to assure visitation, but to no avail. Resler was so uncooperative with the Rainbow Bridge visitation exchange program that the director terminated those services. The record shows Resler's intent in not cooperating was to get "kicked out" of the program. Resler's objective in avoiding and denying visitation has been so focused that, against specific warnings by the court, she violated the court's visitation orders and, as a result, was sentenced to 30 days in jail for contempt. The court also tried visitation exchanges at the Fargo Police Department with drop off and pick up to occur 10 minutes apart so the parties would not have to meet for the exchanges. For reasons not entirely clear in the record, this attempt also failed.

[¶ 14] After working to find a solution, the trial court concluded that because Resler's objective was to prevent Anderson from having a relationship with the child there was no remedy or course of action which would guarantee that relationship if Resler remained the custodial parent. The court attempted to resolve Resler's frustration of Anderson's visitation rights by methods other than changing custody. When those methods failed, because of Resler's actions, the court ordered a custody change.

[¶ 15] We conclude the trial court's decision is not clearly erroneous and we are not left with a definite and firm conviction that the trial court made a mistake.

## III

[¶ 16] Resler asserts the evidence was clearly insufficient to sustain the court's findings that Resler had a personality disorder that had a negative impact on the child's life. The trial court did specifically find Resler had been diagnosed with a personality disorder, but the court made no finding that the disorder has had a negative impact on the child's life. In fact, the court specifically found both par-

ents have the capacity and disposition to give the child love, affection, and guidance as well as the necessities of life, such as food, clothing, and medical care.

[¶ 17] Jan Witte–Bakken, Ph.D., a licensed psychologist, with the Lakeland Mental Health Center in Moorhead, Minnesota, conducted a psychological evaluation of Resler and concluded in her report that Resler has a significant personality disorder. We conclude the record evidence supports the trial court's findings on this matter and they are not clearly erroneous.

## IV

[¶ 18] Resler asserts the trial court erred in limiting Resler's introduction of evidence to show that Resler and her daughter have a good parent-child relationship and that Resler is a good mother. The trial court limited Resler's introduction of evidence on this issue on the ground that it was irrelevant and immaterial because Resler's parenting and relationship with the child were not at issue and because the trial court was prepared to find that Resler is a good mother and has a good relationship with the child. The trial court's admission or exclusion of evidence on relevance grounds will not be overturned on appeal unless the trial court has abused its discretion. *State v. Osier*, 1999 ND 28, ¶ 5, 590 N.W.2d 205. The trial court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, or when its decision is not the product of a rational mental process. *Id.* The trial court's change-of-custody decision is based upon Resler's persistent denial of visitation privileges between the child and her father and Resler's refusal to recognize Anderson and the child's right, as father and daughter, to have a relationship. The court found Resler has good parenting skills and has a good relationship with her daughter. We, therefore, conclude the trial court did not

abuse its discretion in limiting the evidence on this issue upon relevancy grounds.

## V

[¶ 19] Resler asserts the trial court erred in giving too much weight to the guardian ad litem's report. The guardian ad litem recommended the court change custody from Resler to Anderson and provide liberal visitation for Resler. The trial court noted this recommendation in its findings of fact. A guardian ad litem's opinion is appropriate to consider in determining custody, and the trial court has discretion to assign the weight given to such evidence. *Kjelland v. Kjelland,* 2000 ND 86, ¶ 13, 609 N.W.2d 100. There is a presumption the trial court gives proper consideration to the testimony presented by a guardian ad litem. *Olson v. Olson,* 2000 ND 120, ¶ 7, 611 N.W.2d 892. We conclude Resler has failed to overcome the presumption the trial court properly weighed and considered the testimony and recommendation of the guardian ad litem.

## VI

[¶ 20] Resler asserts the trial court erred in changing the child's name from Resler to Anderson without following the proper statutory procedure under N.D.C.C. § 32–28–02. We can find no direction in the trial court's order for judgment or in the third amended judgment changing the child's name from Resler to Anderson. Anderson agrees on appeal that the trial court did not change the child's name from Resler to Anderson. We conclude Resler's argument is without merit.

## VII

[¶ 21] Resler also asserts the trial court erred in refusing to rule on child support and, instead, referring the matter to the Child Support Enforcement Unit. In its judgment the trial court specifically ordered Resler to pay child support of $228.50 per month beginning in July 1999 and continuing until the child's 18th birthday or graduation from high school, whichever occurs later. Following entry of the court's judgment, Resler requested a modification of the child support award. The trial court concluded Resler presented insufficient evidence to justify modification under the child support guidelines, and the court denied the motion. We find no error in the trial court's rulings on this issue.

[¶ 22] The judgment of the trial court is in all respects affirmed.

[¶ 23] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER, DALE V. SANDSTROM, WILLIAM A. NEUMANN, JJ., concur.