2004 ND 15

**Roger W. TANK, Plaintiff and Appellee**

v.

**Sherri L. TANK, n/k/a Sherri L. Koble, Defendant and Appellant.**

No. 20030111.

Supreme Court of North Dakota.

Jan. 20, 2004.

Tom P. Slorby, Minot, N.D., for defendant and appellant; submitted on brief.

Robert S. Thomas of Thomas & Thomas, Minot, N.D., for plaintiff and appellee; submitted on brief.

NEUMANN, Justice.

[¶ 1] Sherri L. Tank, now known as Sherri L. Koble, appeals from an order

denying her motion to amend the divorce judgment seeking to modify the custody provisions. Because the trial court erred in determining Koble had failed to establish a prima facie case entitling her to an evidentiary hearing under N.D.C.C. § 14–09–06.6(4), we reverse and remand.

## I

[¶ 2] Roger W. Tank and Sherri L. Koble were married and have two children together, ages twelve and nine at the time modification was sought. The parties divorced in May 2000. By stipulation, Tank and Koble have joint physical custody of the children, and Tank has primary physical custody. Tank has remarried. His wife has a six-year-old child who resides with them.

[¶ 3] Koble moved to modify the custody arrangement in August 2002, alleging a material change in circumstances necessitated custody modification. According to Koble, Tank failed to adequately care for the children, he interfered with her visitation rights, and the children prefer to live with her. Koble requested she receive physical custody of the children and Tank receive liberal visitation. In her supporting affidavit, Koble provided specific instances and occurrences in support of her motion. Tank responded by objecting to Koble's motion and filed an affidavit denying and explaining Koble's allegations to show custody modification was unwarranted. Koble responded to Tank's affidavit by filing an affidavit further explaining her allegations and countering Tank's assertions. The trial court considered the affidavits and held Koble had failed to show a prima facie case to justify an evidentiary hearing.

[¶ 4] In its order, the trial court addressed most of the issues Koble raised. Specifically, the trial court determined the children appeared to be in a generally safe and stable environment and found no evidence of neglect. The trial court expressed concern over specific instances of conduct related to Tank's care of the children, but noted social services had reviewed the children's care and did not take action or order a follow-up investigation. The court further determined Tank's frustration of Koble's visitation rights was not serious enough to adversely affect the children's best interests. The trial court ultimately determined Koble failed to establish a prima facie case showing a material change in circumstances because her allegations were insufficient to justify custody modification and, therefore, denied her motion without an evidentiary hearing. Koble appeals.

## II

[¶ 5] Koble argues she established a prima facie case under N.D.C.C. § 14–09–06.6, and the trial court erred in denying her an evidentiary hearing on her motion for a change of custody.

[¶ 6] The trial court makes no findings of fact when reviewing a party's affidavits accompanying a motion to modify custody. Determination of whether Koble established a prima facie case entitling her to an evidentiary hearing is a question of law.

[¶ 7] The requirements for custody modification are well-settled and have been recently reiterated in *Volz v. Peterson*, 2003 ND 139, 667 N.W.2d 637. Before custody may be modified after the two-year period following a prior custody order, North Dakota law requires a two-tiered determination by the trial court. N.D.C.C. § 14–09–06.6(6). The trial court must first determine whether a material change in circumstances has occurred and, if it makes such a finding, must determine whether "the modification is necessary to serve the best interest of the child." N.D.C.C. § 14–09–06.6(6)(b). In this case,

we are only concerned with the first requirement.

[¶ 8] The moving party demonstrates a material change in circumstances by establishing a prima facie case justifying custody modification. The proper procedure for resolving a motion to modify custody has been set forth under N.D.C.C. § 14–09–06.6(4), which provides:

A party seeking modification of a custody order shall serve and file moving papers and supporting affidavits and shall give notice to the other party to the proceeding who may serve and file a response and opposing affidavits. The court shall consider the motion on briefs and without oral argument or evidentiary hearing and shall deny the motion unless the court finds the moving party has established a prima facie case justifying a modification. If a prima facie case is established, the court shall set a date for an evidentiary hearing.

[¶ 9] The moving party establishes a prima facie case by alleging, with supporting affidavits, sufficient facts which, if they remained uncontradicted at an evidentiary hearing, would support a custody modification in her favor. *Volz*, 2003 ND 139, ¶ 7, 667 N.W.2d 637 (citing *Lawrence v. Delkamp*, 2003 ND 53, ¶ 7, 658 N.W.2d 758; *Quarne v. Quarne*, 1999 ND 188, ¶ 11, 601 N.W.2d 256). A trial court can find the moving party has failed to bring a prima facie case only if the opposing party presents counter affidavits conclusively establishing the allegations of the moving party have no credibility, or if the movant's allegations are insufficient, on their face, to justify custody modification. *Volz*, at ¶ 8 (citing *O'Neill v. O'Neill*, 2000 ND 200, ¶¶ 4–5, 619 N.W.2d 855). If the opposing party meets that burden, the prima facie case is rebutted and the trial court may deny the motion to modify custody without holding an evidentiary hear-

ing. *Id.* However, if the opposing party fails to meet that burden, an evidentiary hearing must be held to resolve conflicting evidence and determine whether custody modification is warranted. *See id.*

[¶ 10] A material change in circumstances is defined as important new facts unknown to the court at the time of the prior custody decree. *Kelly v. Kelly*, 2002 ND 37, ¶ 17, 640 N.W.2d 38 (citing *Selzler v. Selzler*, 2001 ND 138, ¶ 21, 631 N.W.2d 564; *Mayo v. Mayo*, 2000 ND 204, ¶ 16, 619 N.W.2d 631; *In re N.C.C.*, 2000 ND 129, ¶ 18, 612 N.W.2d 561); N.D.C.C. § 14–09–06.6(6)(a). Allegations showing potential endangerment to the children's physical or mental health constitute a significant change of circumstances, raising a prima facie case for modification of custody and entitlement to an evidentiary hearing. *Volz*, 2003 ND 139, ¶ 10, 667 N.W.2d 637 *O'Neill*, 2000 ND 200, ¶ 8, 619 N.W.2d 855; *Quarne*, 1999 ND 188, ¶ 12, 601 N.W.2d 256. This Court has also recognized a mature child's reasonable preference to live with one parent may constitute a significant change of circumstances under N.D.C.C. § 14–09–06.6. *Volz*, at ¶ 11 (citing *Kelly*, at ¶ 19; *Gietzen v. Gietzen*, 1998 ND 70, ¶ 10, 575 N.W.2d 924; *Mosbrucker v. Mosbrucker*, 1997 ND 72, ¶ 10, 562 N.W.2d 390; *Alvarez v. Carlson*, 524 N.W.2d 584, 590 (N.D.1994)). Generally, frustration of visitation does not alone constitute a significant change of circumstances warranting custody modification. *Hendrickson v. Hendrickson*, 2000 ND 1, ¶ 18, 603 N.W.2d 896. However, custody modification may be appropriate if the best interests of the child are affected by the visitation problems. *Id.*

[¶ 11] In its order, the trial court discussed several of Koble's allegations and addressed Tank's rebuttal to those allegations. The trial court concluded Koble's allegations were insufficient, even if uncon-

tradicted, and denied her an evidentiary hearing, and subsequently, denied her motion for custody modification.

■ [¶ 12] A prima facie case does not require facts which, if proved, would mandate a change of custody as a matter of law. A prima facie case only requires facts which, if proved at an evidentiary hearing, would support a change of custody that could be affirmed if appealed. *See Volz*, 2003 ND 139, ¶ 8, 667 N.W.2d 637. A prima facie case is only "enough evidence to allow the fact-trier to infer the fact at issue and rule in the party's favor." *Black's Law Dictionary* 1209 (7th ed.1999). It is a bare minimum. The affidavits Koble presented establish a prima facie case that would support, though not necessarily require, custody modification, if the allegations were ultimately proven.[1] The trial court erred with regard to the allegations Koble presented of child preference, frustration of visitation, and physical and emotional endangerment when it found Koble's allegations were insufficient to support modification, even if uncontradicted.

### III

■ [¶ 13] In her supporting affidavit, Koble alleged her children expressed their preference to live with her. According to Koble, both children regularly complained to her about their current living arrangement and informed their father they wanted to live with Koble shortly before Tank's wife moved into his home. Koble asserted Tank laughed at the children and informed them they would live with him until they are of age. Additionally, Tank allegedly informed the children that, if they left him to live with their mother, he would "get sick" and "cry a lot." Tank contended the children neither complain about their cur-

rent living arrangement nor ask to live primarily with their mother.

■ [¶ 14] As noted in *Volz*, a mature child's reasonable preference to live with one parent may constitute a significant change in circumstances under N.D.C.C. § 14–09–06.6. *Volz*, 2003 ND 139, ¶ 13, 667 N.W.2d 637 (citing *Lanners v. Johnson*, 2003 ND 61, ¶ 7, 659 N.W.2d 864). "A mature child's preference should be considered by the trial court as a change in circumstances if there are persuasive reasons for that preference, persuasive enough to result in a change in custody." *Mosbrucker*, 1997 ND 72, ¶ 11, 562 N.W.2d 390 (citing *Alvarez v. Carlson*, 524 N.W.2d 584, 592 (N.D.1994) (VandeWalle, C.J., concurring in result); *Barstad v. Barstad*, 499 N.W.2d 584, 589 (N.D.1993) (VandeWalle, C.J., dissenting); *Novak v. Novak*, 441 N.W.2d 656, 658 (N.D.1989) (VandeWalle, J., concurring specially)). In further explaining this issue, we have said, " 'if the child's preference ... stems from, for example, allegations of abuse ... [or] discord among members of a new stepfamily, ... the child's preference coupled with related evidence may demonstrate a significant change of circumstances.' " *Volz*, at ¶ 11 (quoting *Alvarez*, at 590.) The trial court failed to address Koble's allegation.

[¶ 15] We have previously expressed concern over the trial court's failure to address significant allegations raised by the affidavits. *See Volz*, 2003 ND 139, ¶ 13, 667 N.W.2d 637. The trial court erred in failing to find Koble's allegation of her children's preference constituted a significant change in circumstances, establishing a prima facie case for custody modification. In addition to the alleged pref-

---

1. Allegations of harm that prove to be unfounded subject the parent making the allegations to court costs and attorneys fees.

N.D.C.C. § 14–09–06.5; *Sweeney v. Sweeney*, 2002 ND 206, ¶ 18, 654 N.W.2d 407.

erence, Koble's other allegations provide some basis for assuming there may be reasons to support this preference. In this case, there are allegations of conflict among the Tank children and Tank's wife's child. Koble has also alleged Tank neglects the children, fails to spend time with them, leaves them home alone, requires the older child to undertake onerous babysitting responsibilities, and has frustrated her visitation, among other assertions.

[¶ 16] Koble is entitled to an evidentiary hearing to determine whether the children have expressed such a preference and, if so, whether their preference should be given weight in determining whether custody modification is justified. Considerations as to whether the children should be considered "mature" and whether their preference is supported by persuasive reasons to modify custody are issues that should be explored at an evidentiary hearing.

## IV

[¶ 17] In her supporting affidavit, Koble provided detailed allegations of Tank's willful and consistent denial and interference with her visitation rights. The trial court correctly restated this Court's general position that frustration of visitation does not alone constitute a significant change in circumstances warranting custody modification. *See Hendrickson v. Hendrickson,* 2000 ND 1, ¶ 18, 603 N.W.2d 896. The trial court also recognized our holding that custody modification, without first exhausting other remedies, may be appropriate if the best interests of the child are affected by the visitation problems. *Id.* The trial court then found the children's best interests were not affected by the complaints Koble alleged and suggested a more rigid visitation schedule would alleviate some of the parties' problems.

[¶ 18] Koble alleged Tank has prevented her from exercising her right to four weeks of summer vacation in its entirety with the children. Koble asserts she only had two and one-half weeks of summer visitation in 2002 and Tank denied her requested extended summer visitation in 2000 and 2001. She also alleged Tank does not use her as the children's preferred care giver, as provided in the divorce decree, during her days off work because Tank uses the older child as a care giver. Koble alleged Tank involves his children in relaying his denial of her visitation, having one of the children inform Koble when Tank denies her visitation. As a specific instance of denial, Koble alleged Tank once threatened to deny her visitation for an entire week because she returned the children to his home two hours late the previous weekend. Koble asserted she knew Tank and his wife were not home at the original time the children were to return. Tank allegedly informed Koble that she should have left them at his home, regardless. As a result of the children's late return, Tank allegedly withheld six hours of Koble's visitation. Koble also asserts the children have told her Tank does not let them see her as often as he had initially promised.

[¶ 19] Tank responded by asserting Koble did not request her full four-week summer visitation in 2000 and 2001. Tank also alleged Koble did receive four weeks of extended visitation in the summer of 2002. According to Tank, Koble sees the children every other weekend and sees them after school every other day. Tank admitted the children spent an additional six hours with him after they returned later than agreed to during the previous weekend.

[¶ 20] The trial court erred in finding Koble's allegations insufficient to show the best interests of the children may be affected. A full evidentiary hearing should have been held to properly determine whether the children's best interests are affected. In determining whether the allegations constituted a significant change in circumstances, the trial court may determine whether the best interests of the children are affected. However, in determining the children's best interests, the trial court improperly weighed Tank and Koble's conflicting affidavits. The trial court must accept the truth of the moving party's allegations and may not weigh conflicting allegations in deciding whether to grant a hearing. *Volz*, 2003 ND 139, ¶ 14, 667 N.W.2d 637 (citing *O'Neill*, 2000 ND 200, ¶ 7, 619 N.W.2d 855).

## V

[¶ 21] In her supporting affidavit, Koble alleged Tank failed to adequately care for the children, describing instances involving neglect and alluding to possible parentification. Allegations, supported by affidavit, demonstrating a custodial environment that may be endangering the children's physical or mental health, are sufficient to raise a prima facie case for change of custody, entitling the movant to an evidentiary hearing. *See Quarne v. Quarne*, 1999 ND 188, ¶ 12, 601 N.W.2d 256. Koble alleged potential endangerment to her children's physical and mental health, raising a prima facie case for change of custody. The trial court's failure to provide an evidentiary hearing, therefore, was a violation of N.D.C.C. § 14–09–06.6(4) and is reversible error.

[¶ 22] Koble alleged Tank neglected the children while in his care. Tank failed to keep current the younger child's adrenalin injector for his peanut allergy, but argued the child had never before had a severe allergic reaction and the injector was merely a precaution. Tank further contended the expired injector was "most likely still good, and was replaced" as soon as he noticed it was expired. In its order, the trial court described the issue as "somewhat bothersome."

[¶ 23] Koble alleged Tank had left the younger child home by himself while he was ill. Tank was at work and, according to Koble, the child was scared. Tank asserted he worked nearby, called the child hourly, and frequently stopped in to check on the child, and the child was not very sick. Koble claims the child informed her Tank did not call every hour and did not check on him until noon. The trial court noted, in its decision, that an eight-year-old child should not be left home alone, especially when ill. The trial court also recognized conflicting testimony regarding the incident and found that, regardless how often Tank checked on the child, the child should not have been left home alone.

[¶ 24] Koble alleged Tank does not take the children to the doctor when necessary. Rather, she must take them. Tank countered by stating the children do not need to see the doctor often and admitted Koble or his wife takes them, when necessary. Tank also contended he takes the children to the dentist twice per year and takes the older child to orthodontist appointments once a month. The trial court did not address this issue in its order.

[¶ 25] Koble asserted the younger child suffers from poor hygiene. Both parties admit that, due to the child's allergies, they have been advised that the child should bathe less frequently. However, Koble alleged there were several occasions when the child was "filthy" when she arrived for visitation and the child can take daily short showers. Koble also alleged the child does not brush his teeth or wash

his face when in Tank's care. The trial court found the hygiene was "not of a level" to raise concern about the child's welfare, though it might be met with "disapproval by some." We have previously held allegations of neglect, if true, constitute a material change of circumstances. *See Lanners v. Johnson,* 2003 ND 61, ¶ 12, 659 N.W.2d 864. In finding neglect, the *Lanners* Court factored in the child's hygiene. *See id.*

[¶ 26] Koble alleged Tank leaves the children home alone. She stated that on one occasion Tank left them alone at night, and the older child had called Koble sobbing because she was scared and unable to contact Tank. After this specific instance, Koble reported Tank to social services. Tank countered, stating he did not regularly leave the children home alone. During the specific instance referred to by Koble, Tank contends he was gone less than two hours. Tank also explained that social services investigated, but chose not to reexamine the issue at a later date. The trial court found this issue to be troubling, but apparently resolved any concern over the issue by noting "[Koble] reported [Tank] and Social Services took no action against [Tank] for the incident."

[¶ 27] Koble alleged Tank fails to spend time with the children. According to Koble, Tank works full time during the day and spends many evenings and weekends working in his backyard shop. She also alleged Tank's wife works full time and farms, often leaving the older child to babysit the younger child and her child. Tank responded, asserting he works full time during the day, but is limited by his employer to forty-five hours per week. Tank alleged he takes the children to school and has dinner with them almost every evening. He also stated he and the children engage in many weekend activities together, which Koble disputes. The

trial court found the amount of time Tank spends with the children "sounds fairly usual."

[¶ 28] Koble alleged the older child has become the full-time babysitter for the younger child and Tank's wife's child and is even responsible for getting them ready for school in the morning. Koble alleged the child's babysitting responsibilities prevent the child from participating in extracurricular activities. Tank explained the older child is not required to look after the children and has been paid for providing such care. In addition, he alleged the older child is encouraged to participate in any school activities of interest. The trial court found the responsibilities were not excessive or unreasonable.

[¶ 29] This Court has previously addressed concern over a child's care-giving responsibilities. Care-giving responsibilities of children may potentially endanger their physical or emotional health, constituting a material change in circumstances. *See Mayo v. Mayo,* 2000 ND 204, ¶ 25, 619 N.W.2d 631 (holding the trial court's finding the parentification of one child and possibility of parentification of the second child constituted a material change in circumstances was not clearly erroneous). Here, the trial court found the older child's babysitting responsibilities were not unreasonable or excessive.

[¶ 30] In *Volz,* the Court expressed concern over the fact that the trial court noted the custody arrangement was not working well, yet failed to find the plaintiff established a prima facie case. *Volz,* 2003 ND 139, ¶ 13, 667 N.W.2d 637. Similarly, the trial court in this case noted there was cause for concern in several instances yet failed to find Koble established a prima facie case. As in *Volz,* we determine the moving party has established a prima facie case, meeting the requirements of N.D.C.C. § 14–09–06.6(4).

[¶ 31] Koble's affidavits suggest Tank's care of the children could potentially cause emotional or physical harm. The allegations discussed above each show potential endangerment to the children, demonstrating a material change in circumstances and requiring further review at an evidentiary hearing. Even if each allegation, by itself, may not rise to the level of showing potential endangerment, the sum total of the allegations lead to the conclusion that Koble met her burden and is entitled to an evidentiary hearing.

[¶ 32] After reviewing the trial court order, we believe the trial court often weighed Koble's allegations against Tank's defenses, trying and resolving disputed questions of fact on the affidavits alone, without providing an evidentiary hearing and an opportunity to cross-examine the affiants. As we have already discussed, the trial court must accept the truth of Koble's allegations and may not weigh conflicting allegations. *Volz*, 2003 ND 139, ¶ 14, 667 N.W.2d 637 (citing *O'Neill*, 2000 ND 200, ¶ 7, 619 N.W.2d 855). We again note the opposing party's affidavits must conclusively establish that the allegations have no credibility. *Volz*, at ¶ 8 (citing *O'Neill*, at ¶¶ 4–5). Merely offering explanations or conflicting details is insufficient to rebut a prima facie case under N.D.C.C. § 14–09–06.6(4).

[¶ 33] Koble's allegations were sufficiently detailed in their allegations of material changes in circumstances to establish a prima facie case. Koble's affidavits provided specific instances of conduct in which she claims to have personal knowledge of the alleged acts she felt warranted custody modification.

## VI

[¶ 34] We do not express an opinion on the merits of Koble's allegations. As a matter of law, Koble has presented by alleging, with supporting affidavits, sufficient facts which, if uncontradicted, could support, though not necessarily require, a custody modification in her favor. Koble has presented a prima facie case entitling her to an evidentiary hearing, under N.D.C.C. § 14–09–06.6(4), on the change-of-custody issue.

[¶ 35] We reverse and remand for an evidentiary hearing on the motion for change of custody.

[¶ 36] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER, JJ., concur.

MARING, Justice, dissenting.

[¶ 37] I respectfully dissent. The trial court did not err in denying Sherri an evidentiary hearing.

[¶ 38] Originally, Sherri stipulated to Roger having primary physical custody of their twelve-year-old daughter and nine-year-old son. Subsequently, Sherri brought a change of custody motion for both children on August 21, 2002. In her motion to modify custody, she alleged that Roger's failure to provide adequate care for the minor children and his willful and consistent interference with her visitation constituted a material change in circumstances.

[¶ 39] Under the divorce judgment entered in May 2000, Sherri received liberal visitation including: "a. Alternating major holidays of .... b. Up to four (4) weeks each summer. c. The children may spend time with Sherri after school and on her days off. If Roger is unavailable to care for the children Sherri shall be the preferred caregiver. d. Other visitation as agreed by the parties." Sherri's first affidavit dated July 19, 2002, consists mainly of general allegations with only two specific incidents described. One concerning a denial of after school visitation which resulted from a

late return and the other alleging Roger left their son home alone when he was sick one day. In Sherri's September 10, 2002, affidavit, which is her response to Roger's affidavit, she alleges she received only two and one-half weeks of summer visitation in 2002. She never alleges why she did not receive more. She alleges she did not receive four weeks in 2000 or 2001, but we are never told how much visitation she did receive. She alleges she requested "extended" summer visitation, but Roger made excuses why she could not have the full four weeks. She also alleges that "[w]hen I would ask the plaintiff for visitation on my days off, he would tell me that [our daughter] had agreed to baby-sit twice per week." She never alleges a time period or dates. Finally, she alleges that on Father's Day in 2002, she took the children to a movie that made her late returning the children, and as a result, Roger would not let her see the children the entire next week, and she lost six hours of visitation.

[¶ 40] Our Court has emphasized that frustration of visitation does not alone constitute a material change in circumstances to warrant change in custody. *Sweeney v. Sweeney*, 2002 ND 206, ¶ 11, 654 N.W.2d 407 (quoting *Anderson v. Resler*, 2000 ND 183, ¶ 9, 618 N.W.2d 480). Our Court has suggested a trial court should first resort to a more rigid visitation schedule, rather than a change in custody unless the visitation problems have resulted in adverse affects to the child's best interests. *Id.* Allegations of general problems with summer visitation without any allegation specifically describing the circumstances; a problem with visitation generally on Sherri's days off because the daughter baby-sits; and one incident of the loss of after-school visitation because Sherri returned the children home late on Father's Day are not sufficient facts to show a material change of circumstances necessitating a

modification of custody in the best interests of the children. A motion to modify the visitation schedule would be more appropriate than a motion to modify custody.

[¶ 41] With regard to the allegations in the affidavits of Sherri that Roger is not providing adequate care for the children, she states that on Labor Day 2000, the children were left alone, but that the daughter did reach Roger eventually on his cell phone; she states the son was left alone during the day once when he was sick; she states Roger had not replaced an expired injector for the son's allergy to peanuts; and she states Roger does not make the son bathe or brush his teeth regularly. Although all of these allegations evidence a parent, who is perhaps, more laid back than appropriate to some, they do not show a material change in circumstances or that modification is necessary in the children's best interests.

[¶ 42] If the affidavits contained allegations of multiple specific dates on which these children were left alone at night or during the day when they were sick, it may rise to a "material" change in circumstances and modification may be necessary in the children's best interests. If there were specific allegations that the child's hygiene was adversely affecting him physically or emotionally, and if Roger's failure to refill the injector immediately upon its expiration seriously endangered the child, and such neglect continued, custody modification due to a material change of circumstances, may be necessary in the child's best interests. However, these incidents appear to be one time occurrences and not permanent or continuous and not significant or material.

[¶ 43] The majority opinion relies on the children's preference to live with Sherri to show a material change in circumstances. The first affidavit of Sherri never

mentions this preference. It is in her Responsive Affidavit that a preference is stated, but no persuasive reasons for this preference of the children are stated. The only allegation is a general statement that the children complain regularly about their current living arrangement. We have stated that a mature child's preference should only be considered if there are persuasive reasons for it. *Krizan v. Krizan,* 1998 ND 186, ¶ 9, 585 N.W.2d 576. In this case we are left to speculate why the children want to live with Sherri. Not every change in circumstances is a "material" change warranting a modification of custody. *See Kelly v. Kelly,* 2002 ND 37, ¶¶ 46, 47, 50, 640 N.W.2d 38 (Maring, J., concurring specially) (suggesting the Legislature intended to curtail hearings on custody modification by requiring a "material" change of circumstances, which should be defined as a significant or important change that has a negative impact on the well-being of the child).

[¶ 44] As I stated in my dissent in *Mock v. Mock,* 2004 ND 14, in order for affidavits to establish a prima facie case for modification, they must be made on firsthand knowledge; be specific and detailed; contain facts that support a continuing and significant, not minor or trivial, change in the child's circumstances; and contain facts that establish a "significant degree of danger" for endangerment to a child's physical and emotional health and development. These affidavits do not establish a prima facie case for a modification of child custody.

[¶ 45] The trial court's explanation for denying the evidentiary hearing explicitly considered and rejected as insufficient the facts alleged. The trial court did not abuse its discretion in denying an evidentiary hearing, and I would affirm its order.

[¶ 46] The majority establishes a de novo standard for review of a trial court's denial of an evidentiary hearing for child custody modifications without citation to any authority. *See Orvedal v. Orvedal,* 2003 ND 145, ¶ 10, 669 N.W.2d 89 (stating this Court applies the de novo standard of review to questions of law). In *Nice–Petersen v. Nice–Petersen,* 310 N.W.2d 471, 472 (Minn.1981), the Minnesota Supreme Court applied an abuse of discretion standard of review. With the exception of *Griese v. Kamp,* 666 N.W.2d 404 (Minn.Ct. App.2003), and *Ross v. Ross,* 477 N.W.2d 753 (Minn.Ct.App.1991), the majority of the Minnesota Appellate Courts, however, have applied an abuse of discretion standard of review. *See Geibe v. Geibe,* 571 N.W.2d 774, 777 (Minn.Ct.App.1997) (stating, "[s]ubsequent decisions by this court have applied an abuse of discretion standard ..., relying on the court's general broad discretion in custody matters"). Neither *Griese* nor *Ross* address the abuse of discretion standard used by the Minnesota Supreme Court in *Nice–Petersen.* Although the Minnesota Supreme Court has not directly addressed the conflict among the Minnesota Courts of Appeals' panels on this standard of review issue, it applied an abuse of discretion standard in reviewing whether a district court properly denied a request for an evidentiary hearing under Minn.Stat. § 518.185. *Valentine v. Lutz,* 512 N.W.2d 868, 872 (Minn.1994).

[¶ 47] Recently, the Supreme Court of Washington concluded that application of an abuse of discretion standard of review is more appropriate in these cases than the de novo standard of review. *In re the Parentage of Jannot,* 149 Wash.2d 123, 65 P.3d 664, 666 (2003). The Supreme Court of Washington reasoned:

> [W]e recognize that a trial judge does stand in a better position than an appellate judge to decide whether submitted affidavits establish adequate cause for a

full hearing on a petition to modify a parenting plan.

. . .

Most importantly, in the area of domestic relations, the appellate courts have granted deference to the trial courts because "[t]he emotional and financial interests affected by such decisions are best served by finality," and de novo review may encourage appeals. We also recognize that extended litigation can be harmful to children.

*In re the Parentage of Jannot*, at 666 (internal citations omitted). I would submit that we should adopt the reasoning of the Supreme Courts of Washington and Minnesota and hold that our Court may overturn a trial court's prima facie determination only if the trial court has abused its discretion.

[¶ 48] It should be noted that North Dakota has applied the abuse of discretion standard of review to other family law issues. We apply the abuse of discretion standard when reviewing a trial court's decision on motions to alter or amend divorce judgments and for interim orders for temporary custody. *Cline v. Cline*, 1998 ND App 11, ¶ 7, 585 N.W.2d 145. We review a motion to retroactively modify child support under an abuse of discretion standard of review. *Krizan*, 1998 ND 186, ¶ 13, 585 N.W.2d 576. In some limited areas, we review child support determinations under an abuse of discretion standard of review. *Johnson v. Johnson*, 2002 ND 151, ¶ 8, 652 N.W.2d 315. "Normally, in reviewing an exercise of the district court's authority to maintain the status quo pending a hearing on the merits, we will apply an abuse of discretion standard." *Hanson v. Hanson*, 1997 ND 151, ¶ 7, 567 N.W.2d 216. "We review the effective date for a modification of child support under an abuse of discretion standard."

*Hilgers v. Hilgers*, 2002 ND 173, ¶ 18, 653 N.W.2d 79.

[¶ 49] For these reasons, I respectfully dissent and would affirm the trial court's decision under an abuse of discretion standard of review.

[¶ 50] Mary Muehlen Maring

SANDSTROM, Justice, dissenting.

[¶ 51] Because the majority is impermissibly substituting its views for the clear action of the legislature, I respectfully dissent.

[¶ 52] The legislature has provided that before there is a hearing on change of custody, the petitioner must present affidavits establishing a prima facie case justifying a modification. N.D.C.C. § 14–09–06.6(4). "Prima facie evidence" or "prima facie case" are legal terms with well-established meanings. *See Black's Law Dictionary* 579 & 1209 (7th ed.1999). The North Dakota Century Code itself specifies how it is to be interpreted. N.D.C.C. tit. 1. The Code specifies that words are to be understood in their ordinary sense unless a contrary meaning plainly appears. N.D.C.C. § 1–02–02. The Code specifies that there is no common law (judge-made law) when the law is declared by statute. N.D.C.C. § 1–01–06. Here the majority interprets prima facie evidence in a way contrary to the ordinarily understood meaning of the term, and the majority substitutes its judge-made law for the enactment of the legislature.

[¶ 53] Prima facie evidence is admissible evidence that, if uncontradicted, would be sufficient to justify a judgment in the presenting party's favor. *Black's Law Dictionary* 579 & 1209 (7th ed.1999).

[¶ 54] Here the majority says, in effect, that much less than prima facie evidence is necessary to entitle a moving party to a hearing on change of custody, even though

the legislature has said only prima facie evidence is sufficient.

[¶ 55] A prima facie case requires competent and sufficiently specific nonconclusory evidence. *See Schnoor v. Meinecke,* 77 N.D. 96, 40 N.W.2d 803, 808 (1950). Competence generally requires that the witness have first-hand knowledge of facts. *Black's Law Dictionary* 576–77 (7th ed.1999). How does the person know? Witnesses are generally not competent to testify to what they only "suspect" or "secretly hope" the facts are. *See State v. Schill,* 406 N.W.2d 660, 662 (N.D.1987).

[¶ 56] Affidavits fail to establish a prima facie case when they are not competent, they do not show a basis of actual personal knowledge, or they are conclusory, stating conclusions without the support of evidentiary facts.

[¶ 57] I generally agree with the majority that if the allegations here were supported by specific, competent, admissible evidence, they would be sufficient to justify a hearing. But I agree with Justice Maring's dissent that most of the allegations are not supported by specific, competent, admissible evidence.

[¶ 58] I would affirm the district court.

[¶ 59] Dale V. Sandstrom