2013 ND 212

**Matthew F. WALD, Plaintiff and Appellee**

v.

**Anna Rose HOLMES, a/k/a Anna Rose Biemold, Defendant and Appellant.**

No. 20130124.

Supreme Court of North Dakota.

Nov. 21, 2013.

Jacey L. Johnston, Grand Forks, ND, for plaintiff and appellee; submitted on brief.

Jesse D. Matson, Fargo, ND, for defendant and appellant; submitted on brief.

KAPSNER, Justice.

[¶ 1]   Anna Holmes appeals from a district court order denying an evidentiary hearing on her motion for change of custody.   Because we conclude Holmes met her burden of establishing a prima facie case justifying modification, we reverse the district court order and remand for an evidentiary hearing.

I

[¶ 2]   Following an uncontested hearing, Matthew Wald was granted primary residential responsibility of his and Anna Holmes's minor child.   Less than two years later, Holmes filed a motion for change of primary residential responsibility, alleging interference with parenting time, denial of contact, chemical dependency, and a history of emotional and physical abuse.   Holmes's motion was supported by several affidavits, including her own affidavit and one written by Wald's former girlfriend.   Wald responded to the motion and filed several affidavits on his behalf, including one written by the same former girlfriend, which purported to rescind the affidavit she had submitted earlier in support of Holmes.   The district court denied Holmes's motion, noting that the former girlfriend's first affidavit had been rescinded, finding Holmes presented no first-hand

knowledge of the facts she alleged in support of her motion, and holding her motion was entirely without merit. The court also awarded Wald attorney fees. Holmes filed a motion for reconsideration, which was denied by the district court.

## II

### A

[¶ 3] On appeal, Holmes argues the district court erred by denying an evidentiary hearing on her change of primary residential responsibility motion. "[A] party moving to change [primary residential responsibility], when less than two years has passed, is required to establish a prima facie case" justifying a change of primary residential responsibility in order to obtain an evidentiary hearing. *Green v. Green*, 2009 ND 162, ¶ 5, 772 N.W.2d 612 (citing N.D.C.C. § 14–09–06.6(4)). This Court has held that the determination of whether a prima facie case has been established is a question of law, reviewed de novo. *Green*, at ¶ 5.

[¶ 4] When a motion to modify primary residential responsibility is brought less than two years after an initial primary residential responsibility order:

> The court may not modify the primary residential responsibility . . . unless the court finds the modification is necessary to serve the best interests of the child and:
>
> a. The persistent and willful denial or interference with parenting time; [or]
>
> b. The child's present environment may endanger the child's physical or emotional health or impair the child's emotional development. . . .

N.D.C.C. § 14–09–06.6(5). The legislature has adopted a non-exhaustive list of factors that must be considered by the court, when applicable, in determining whether a change in primary residential responsibility is in the best interest of a child. *See* N.D.C.C. § 14–09–06.2(1).

[¶ 5] "Upon a motion to modify primary residential responsibility under this section, the burden of proof is on the moving party." N.D.C.C. § 14–09–06.6(8). If the court finds the moving party established a prima facie case justifying modification, then the court will set a date for an evidentiary hearing. N.D.C.C. § 14–09–06.6(4). A prima facie case is established by the moving party "alleging, with supporting affidavits, sufficient facts which, if they remained uncontradicted at an evidentiary hearing, would support a [primary residential responsibility] modification in her favor." *Tank v. Tank*, 2004 ND 15, ¶ 9, 673 N.W.2d 622 (citing *Volz v. Peterson*, 2003 ND 139, ¶ 7, 667 N.W.2d 637).

> A prima facie case does not require facts which, if proved, would mandate a change of [primary residential responsibility] as a matter of law. A prima facie case only requires facts which, if proved at an evidentiary hearing, would support a change of [primary residential responsibility] that could be affirmed if appealed. *See Volz*, 2003 ND 139, ¶ 8, 667 N.W.2d 637. A prima facie case is only "enough evidence to allow the fact-trier to infer the fact at issue and rule in the party's favor." *Black's Law Dictionary* 1209 (7th ed. 1999). It is a bare minimum.

*Tank*, at ¶ 12. "Allegations alone do not establish a prima facie case, and affidavits supporting the motion for modification must include competent information, which usually requires the affiant have first-hand knowledge." *Sweeney v. Kirby*, 2013 ND 9, ¶ 5, 826 N.W.2d 330 (quoting *Schumacker v. Schumacker*, 2011 ND 75, ¶ 7, 796 N.W.2d 636).

**[¶ 6]** There are two situations in which a court may find that a prima facie case has not been established: 1) the opposing party presents counter affidavits conclusively establishing the allegations of the moving party have no credibility, or 2) the moving party's allegations are insufficient on their face to justify modification. *Tank*, 2004 ND 15, ¶ 9, 673 N.W.2d 622 (citing *Volz*, 2003 ND 139, ¶ 8, 667 N.W.2d 637). However, "the trial court must accept the truth of [the moving party's] allegations and may not weigh conflicting allegations." *Tank*, at ¶ 32 (citing *Volz*, at ¶ 14). "Merely offering explanations or conflicting details is insufficient to rebut a prima facie case under N.D.C.C. § 14–09–06.6(4)." *Tank*, at ¶ 32.

**[¶ 7]** If the opposing party conclusively establishes the allegations of the moving party have no credibility, the prima facie case is rebutted and the trial court may deny the moving party's motion without holding an evidentiary hearing. *Tank*, 2004 ND 15, ¶ 9, 673 N.W.2d 622 (citing *Volz*, 2003 ND 139, ¶ 8, 667 N.W.2d 637). "However, if the opposing party fails to meet that burden, an evidentiary hearing must be held to resolve conflicting evidence and determine whether [primary residential responsibility] modification is warranted." *Tank*, at ¶ 9 (citing *Volz*, at ¶ 8).

### B

**[¶ 8]** As a preliminary matter, Wald argues that res judicata bars the court from hearing any information that was available or considered by the court in prior proceedings. However, this Court has said, "The doctrine [of res judicata] should not be strictly applied to preclude the trial court from hearing for the first time relevant [primary residential responsibility]-related evidence bearing on considerations of what is in a child's best interests."

*Wetch v. Wetch*, 539 N.W.2d 309, 312 (N.D. 1995) (citing *Randolph v. Dean*, 27 Ill. App.3d 913, 327 N.E.2d 473, 474–75 (1975)).

**[¶ 9]** Wald also argues, and the district court agreed, that the first affidavit of Wald's former girlfriend should not be considered, because she rescinded that affidavit in a subsequent affidavit. Neither party cites authority for whether a witness's affidavit may be withdrawn, and our existing caselaw does not address the issue. While an affidavit must be withdrawn if the information asserted is discovered to be false, *see* N.D.R.Civ.P. 11 and N.D.R. Prof. Conduct 3.3, no rule or law provides for withdrawal where the affiant merely no longer wishes to be involved. State and federal courts in other jurisdictions have held that allowing withdrawal for reasons other than promoting truth is improper. *See, e.g., Krumme v. W. Point–Pepperell, Inc.*, 735 F.Supp. 575, 580 (S.D.N.Y.1990) (finding that Fed. R.Evid. 102 required denial of a motion to withdraw a nonparty's affidavit because the affidavit was voluntarily given and withdrawal of the affidavit would not assist in ascertaining the truth); *Scholl v. Ins. Co. of N. Am.*, 132 Wis.2d 478, 392 N.W.2d 847 (Ct.App.1986), unpublished opinion 1986 WL 217472 *1 (finding that the district court's decision to allow withdrawal of a truthful affidavit was error and stating that "[m]atters submitted as evidence should remain in evidence"). We accept the reasoning of these courts and hold that a truthful affidavit may not be subsequently withdrawn where the affiant seeks withdrawal merely because she no longer wishes to be involved in a case.

**[¶ 10]** In this case, Wald's former girlfriend submitted a second affidavit through Wald seeking to withdraw her first affidavit. Her reasons for withdrawal are unconvincing. She indicated that at

the time she signed the first affidavit, she and Wald had recently broken up, that she "sign[ed] the affidavit for the wrong reasons," and that she and Wald have since come to an agreement with respect to their own child. At no time does she indicate that anything in her first affidavit was untrue or mischaracterized. Furthermore, while the district court did not find any evidence of wrongdoing by Wald with respect to the second affidavit, a rule allowing a sworn witness to withdraw a truthful and accurate affidavit due to a change of heart would pave the way for witness intimidation. For these reasons, we conclude that the district court's decision to treat the first affidavit as withdrawn was improper, and the affidavit should be considered as evidence supporting Holmes's claims.

## C

[¶ 11] To establish a prima facie case warranting an evidentiary hearing on a motion for change of primary residential responsibility brought less than two years after an initial primary residential responsibility order, Holmes must first show either "[t]he persistent and willful denial or interference with parenting time" or that "[t]he child's present environment may endanger the child's physical or emotional health or impair the child's emotional development." N.D.C.C. § 14–09–06.6(5). Under the court's primary residential responsibility order, Holmes was granted "reasonable and liberal supervised parenting time until her chemical dependency issues are adequately addressed and she has maintained sobriety for a reasonable amount of time." "Parenting time" is defined as "the time when the child is to be in the care of a parent." N.D.C.C. § 14–09–00.1. On the other hand, the same statute defines "parental rights and responsibilities" as "all rights and responsibilities a parent has concerning the parent's child,"

and includes the right "to reasonable access to the child by written, telephonic, and electronic means." N.D.C.C. §§ 14–09–00.1; 14–09–32(1)(c). The judgment also acknowledges the parental right of access by these other means.

[¶ 12] Holmes has personal knowledge of her own contact with the child. *See Sweeney,* 2013 ND 9, ¶ 7, 826 N.W.2d 330. Holmes does not actually allege that she had been prevented from seeing the child in person. Instead, she indicates that she lives out of state and has been denied phone contact with the child. She does not allege that she has made any attempt to exercise her in-person parenting time as set forth in the parties' primary residential responsibility order. Holmes has not made a prima facie showing that Wald interfered with or denied her in-person parenting time, but she does allege that Wald has interfered with her rights of access to the child.

[¶ 13] Holmes offers her own affidavit, an affidavit of Wald's former girlfriend, and an affidavit of two of Holmes's and Wald's former neighbors in support of the argument that the environment in Wald's home endangers the child's physical or emotional health or impairs the child's emotional development. In Holmes's affidavit, she states that "[Wald's] family has expressed their concerns to me regarding his stability and addiction to alcohol." She also indicates that "[i]n the past, [Wald's] home was both physically and emotionally abusive to me and the child." Two of the parties' former neighbors submitted an affidavit in which they detail a history of Wald becoming drunk and aggressive around them and the child while they were babysitting her.

[¶ 14] Wald's former girlfriend also had first-hand knowledge of Wald's conduct because she lived with him for almost two

years. In her affidavit, Wald's former girlfriend alleges, "When the child was sick, [Wald] wouldn't deal with it. I would be forced to take the child to the doctor." She also states Wald "smokes marijuana on a daily basis," and that Wald told her that after she moved out, he had been drinking pretty constantly. She indicated Wald "has serious anger management issues" that he has not sought treatment for. She explained she was "concerned with his inability to deal with children, anger management problems and his drinking/smoking that he simply is not able to be a full time father" and that he "cannot handle the day to day stuff."

[¶ 15] The remaining affidavits offered by Holmes speak to her character, and do not contain relevant, first-hand knowledge concerning Wald or the child's home life. While Wald also submitted several affidavits, the information provided therein primarily consisted of unrelated, anecdotal evidence about why Wald should retain primary residential responsibility, rather than evidence which conclusively established that Holmes's allegations of physical and emotional abuse, drug use, and alcohol abuse have no credibility. We therefore find that Holmes has established a prima facie case that the child's present environment may endanger the child's physical or emotional health or impair the child's emotional development.

## D

[¶ 16] To establish a prima facie case warranting an evidentiary hearing, Holmes must also show "the modification is necessary to serve the best interests of the child." N.D.C.C. § 14–09–06.6(5). When evaluating the best interests of the child, the court must consider, when applicable:

a. The love, affection, and other emotional ties existing between the parents and child and the ability of each parent to provide the child with nurture, love, affection, and guidance.

b. The ability of each parent to assure that the child receives adequate food, clothing, shelter, medical care, and a safe environment.

c. The child's developmental needs and the ability of each parent to meet those needs, both in the present and in the future.

d. The sufficiency and stability of each parent's home environment, the impact of extended family, the length of time the child has lived in each parent's home, and the desirability of maintaining continuity in the child's home and community.

e. The willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child.

f. The moral fitness of the parents, as that fitness impacts the child.

g. The mental and physical health of the parents, as that health impacts the child.

h. The home, school, and community records of the child and the potential effect of any change.

i. If the court finds by clear and convincing evidence that a child is of sufficient maturity to make a sound judgment, the court may give substantial weight to the preference of the mature child. The court also shall give due consideration to other factors that may have affected the child's preference, including whether the child's preference was based on undesirable or improper influences.

j. Evidence of domestic violence. In determining parental rights and responsibilities, the court shall consider evidence of domestic violence. If the court

finds credible evidence that domestic violence has occurred, and ... there exists a pattern of domestic violence within a reasonable time proximate to the proceeding, this combination creates a rebuttable presumption that a parent who has perpetrated domestic violence may not be awarded residential responsibility for the child....

k. The interaction and interrelationship, or the potential for interaction and interrelationship, of the child with any person who resides in, is present, or frequents the household of a parent and who may significantly affect the child's best interests. The court shall consider that person's history of inflicting, or tendency to inflict, physical harm, bodily injury, assault, or the fear of physical harm, bodily injury, or assault, on other persons.

l. The making of false allegations not made in good faith, by one parent against the other, of harm to a child as defined in section 50–25.1–02.

m. Any other factors considered by the court to be relevant to a particular parental rights and responsibilities dispute.

N.D.C.C. § 14–09–06.2(1).

[¶ 17] The remaining affidavits and evidence submitted by Holmes support her argument that modification is necessary to serve the best interests of the child. Several affidavits alluded to Wald's abusive behavior toward Holmes and the child, which, under factor (j) would create a rebuttable presumption against Wald. Many of the affidavits speak to Holmes's character as a good, hardworking person. They indicate she is employed and living in some kind of group home, and an overarching theme is that she has been "getting her life back on track," in support of factors (b), (d), and (g). Her chemical dependency treatment discharge summary indicates she made good progress. They also indicate she cares very deeply about her child and that, prior to her chemical dependency issues, she was a good parent, in support of factors (a), (c), and (f). Wald's former girlfriend indicated that, while she lived with Wald, she was the child's primary caretaker and Wald made no attempt to deal with the child when the child became upset. The allegations in Holmes's affidavit suggest that Wald is not willing to facilitate the relationship between Holmes and the child under factor (e). Wald's affidavits do not conclusively establish that Holmes's allegations have no credibility. As a result, the evidence presented by Holmes, if ultimately determined to be credible and uncontradicted at an evidentiary hearing, would support modification. Therefore, we conclude that the evidence presented by Holmes has established a prima facie showing that modification is necessary to serve the best interests of the child.

### III

[¶ 18] Holmes also argues the district court erred in awarding attorney fees to Wald. Section 28–26–01(2), N.D.C.C., mandates the awarding of costs, including attorney fees, for frivolous claims. "Such costs must be awarded regardless of the good faith of the attorney or party making the claim for relief if there is such a complete absence of actual facts or law that a reasonable person could not have thought a court would render judgment in that person's favor...." *Id.* An award of attorney fees will not be reversed on appeal unless the court abused its discretion. *Barrett v. Gilbertson*, 2013 ND 35, ¶ 25, 827 N.W.2d 831 (citing *Wolt v. Wolt*, 2011 ND 170, ¶ 26, 803 N.W.2d 534). "A court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, when the court

misinterprets or misapplies the law, or when its decision is not the product of a rational mental process leading to a reasoned determination." *Barrett*, at ¶ 25.

[¶ 19] In this case, the district court awarded attorney fees to Wald, stating:

> This court has found that the Defendant's motion is without merit. The Defendant's motion was supported by affidavits in which the affiants had no first-hand knowledge or where [sic] not even acquainted with the Plaintiff. Therefore, this court finds that it is appropriate to award the Plaintiff attorney's fees for having to defend this motion.

As discussed above, we conclude that both Holmes and Wald's former girlfriend had first-hand knowledge of facts related to Wald, which they submitted to the court in their affidavits. Additionally, while Holmes did present affidavits by individuals unfamiliar with Wald, these affidavits would have been relevant to a best interest analysis. The district court failed to reach the best interest analysis under N.D.C.C. § 14–09–06.6(5). *See Frey v. Frey*, 2013 ND 100, ¶ 11, 831 N.W.2d 753 (noting the court must consider all relevant best interest factors when deciding whether to modify primary residential responsibility). Instead, the district court appears to have weighed the evidence presented by both parties, contrary to the procedure set forth in *Tank*, 2004 ND 15, ¶ 32, 673 N.W.2d 622. Because the district court did not apply the correct law in deciding Holmes's motion, and because we conclude Holmes's claims are not frivolous when examined under the appropriate standards, we hold that the district court's award of attorney fees was an abuse of discretion.

## IV

[¶ 20] Wald requests damages, attorney fees, and double costs for defending the appeal, arguing Holmes's affidavits were not supported by first-hand knowledge and that res judicata bars some of her factual contentions. Under N.D.R.App.P. 38, "[i]f the court determines that an appeal is frivolous, or that any party has been dilatory in prosecuting the appeal, it may award just damages and single or double costs, including reasonable attorney's fees." "An appeal is frivolous if it is flagrantly groundless, devoid of merit, or demonstrates persistence in the course of litigation which evidences bad faith." *Holbach v. Holbach*, 2010 ND 116, ¶ 17, 784 N.W.2d 472 (quoting *Healy v. Healy*, 397 N.W.2d 71, 76 (N.D.1986)). We conclude the appeal is not frivolous, and we, therefore, deny the request for damages, attorney fees, and double costs.

## V

[¶ 21] Because we conclude Holmes met her burden of establishing a prima facie case justifying modification, we reverse the district court order and remand for an evidentiary hearing.

[¶ 22] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.