# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

### 2025 ND 105

Casey Joe Weber,                                                     Plaintiff and Appellee

v.

Mackenzie Beth Pennington,                              Defendant and Appellant

### No. 20240323

Appeal from the District Court of Eddy County, Southeast Judicial District, the Honorable Daniel D. Narum, Judge.

AFFIRMED.

Opinion of the Court by Crothers, Justice, in which Chief Justice Jensen and Justice Tufte joined. Justice Bahr filed a dissenting opinion in which Justice McEvers joined.

Patti J. Jensen, East Grand Forks, MN, for plaintiff and appellee.

Christopher E. Rausch, Bismarck, ND, for defendant and appellant.

**Crothers, Justice.**

[¶1]   Mackenzie Pennington, formerly known as Mackenzie Weber, appeals the district court order denying her motion to award her primary residential responsibility of her and Casey Weber's two minor children. Pennington argues the court erred in concluding she did not establish a prima facie case entitling her to an evidentiary hearing. We affirm.

I

[¶2]   Pennington and Weber married in June 2011. The parties have two children together: B.B.W., born in 2017, and H.G.W., born in 2018. In October 2020, Weber initiated a divorce action. At the time of trial, Pennington resided in Squaw Gap, North Dakota, and Weber resided in New Rockford, North Dakota.

[¶3]   In August 2021, the district court entered judgment incorporating the parties' settlement agreement regarding the children. The judgment awarded Pennington and Weber equal and shared parenting responsibility, and joint legal and alternating weekly physical custody. Because the parties agreed the children will attend school in New Rockford, and the distance between Pennington's residence and Weber's residence, the judgment required Pennington to exercise her parenting time in New Rockford during the school year.

[¶4]   In November 2021, Pennington made a motion to provide her with primary residential responsibility of the children. She alleged the parenting time schedule was not feasible long term due to the distance she traveled from Squaw Gap to New Rockford every other week. Weber opposed Pennington's motion and requested primary residential responsibility. After a hearing, the district court denied Pennington's motion and granted Weber's motion. The court amended the judgment to award Weber primary residential responsibility and to modify the parenting plan allowing Pennington to have parenting time on alternating weekends during the school year.

[¶5]   In September 2024, two years after the order awarding Weber primary residential responsibility, Pennington sought primary residential responsibility. She alleged Weber failed to provide for the children's medical and educational needs. Pennington offered affidavits and documents to support her motion. The district court denied the motion, concluding Pennington "failed to demonstrate a prima facie case" because she did not "show a material change in circumstances that has adversely affected the children or that has result[ed] in a general decline of their condition."

II

[¶6]   Pennington argues she is entitled to an evidentiary hearing because she established a prima facie case for modification of primary residential responsibility under N.D.C.C. § 14-09-06.6.

A

[¶7]   A district court may modify primary residential responsibility under N.D.C.C. § 14-09-06.6. When a party seeks modification of primary residential responsibility two years after entry of the prior order establishing primary residential responsibility, the party must establish a prima facie case justifying modification. N.D.C.C. § 14-09-06.6; *Schroeder v. Schroeder*, 2014 ND 106, ¶ 7, 846 N.W.2d 716. "The purpose of the prima facie case requirement is to avoid holding modification hearings based on mere allegations alone[.]" *Kartes v. Kartes*, 2013 ND 106, ¶ 12, 831 N.W.2d 731. The statutory procedure "allows the district court to eliminate unsupported or frivolous cases without imposing upon the court and the parties the burden and expense of an unnecessary evidentiary hearing." *Id.*

[¶8]   A party moving for primary residential responsibility is entitled to an evidentiary hearing only if new facts have arisen since the prior order constituting a material change of circumstances, and "modification is necessary to serve the best interests of the child." N.D.C.C. § 14-09-06.6(6); *Kerzmann v. Kerzmann*, 2021 ND 183, ¶ 6, 965 N.W.2d 427. "A prima facie case requires facts

2

that show there could be a change in [primary residential responsibility] if they are proven at an evidentiary hearing." *Id.* ¶ 8.

> "We have explained that a prima facie case requires only enough evidence to permit a factfinder to infer the fact at issue and rule in the moving party's favor. A prima facie case is a bare minimum and requires facts which, if proved at an evidentiary hearing, would support a change of custody that could be affirmed if appealed. Allegations alone do not establish a prima facie case, and affidavits supporting the motion for modification must include competent information, which usually requires the affiant have first-hand knowledge. Affidavits are not competent if they fail to show a basis for actual personal knowledge, or if they state conclusions without the support of evidentiary facts."

*Id*. (quoting *Klundt v. Benjamin*, 2021 ND 149, ¶ 6, 963 N.W.2d 278); *see also Falcon v. Knudsen*, 2023 ND 94, ¶ 9, 990 N.W.2d 749 ("If affidavits fail to show a basis for actual personal knowledge, or if they state conclusions without the support of evidentiary facts, they do not support a prima facie case.") (cleaned up). A district court may conclude the moving party failed to establish a prima facie case only if the opposing party presents counter affidavits conclusively establishing the allegations of the moving party have no credibility, or if the movant's allegations are insufficient, on their face, to justify custody modification. *Jensen v. Jensen*, 2023 ND 22, ¶ 3, 985 N.W.2d 679. "Whether a party has established a prima facie case for a change of primary residential responsibility is a question of law which we review de novo." *Id.* (cleaned up).

B

1

[¶9]   Pennington claims Weber is not acting as the children's primary caregiver. Pennington alleges Weber does not provide for the children's medical care. Rather, Pennington asserts she provides all the medical care, including scheduling and taking the children to their appointments. Pennington alleges Weber did not maintain the children's dental care, so the children now receive

dental care closer to her. Pennington also asserts that when H.G.W. continued to have sore throats, Weber failed to schedule an appointment for H.G.W. to see a doctor, and the responsibility fell on her to arrange an appointment. According to Pennington, after learning H.G.W. needed surgery to have her tonsils removed, Pennington scheduled the surgery because Weber failed to do so. Pennington also took care of H.G.W. following the surgery.

[¶10] Pennington alleges Weber failed to provide H.G.W. with the proper vaccinations needed to attend kindergarten. Pennington received a letter from the school, dated August 21, 2024, indicating H.G.W. would be excluded from kindergarten unless the school received proof of updated vaccinations by October 1. Pennington asserts she was unaware H.G.W. did not have the proper vaccinations until she received the letter. When she spoke to the school on September 17, Pennington was allegedly informed the school had not been provided records indicating H.G.W. received her vaccinations. According to Pennington, Weber did not schedule to have H.G.W. vaccinated until September 24, a day after she filed her motion to modify.

[¶11] In its order denying Pennington's motion, the district court stated:

> "[Pennington's] supporting affidavits do not include evidentiary facts to support her conclusion that the children are 'suffering.' Rather, the affidavits demonstrate the children are continuing to receive medical care, dental care, and their school supplies— although she desires for Weber to make those arrangements, instead of her. Pennington's brief alleges that one child 'will be excluded from school if she does not have the proper vaccines within 7 days.' Yet, that allegation was speculative at the time it was made, and there is nothing further in the record demonstrating that child was actually excluded from school."

[¶12] Before modifying primary residential responsibility, N.D.C.C. § 14-09-06.6(6)(a) requires the court find a material change in circumstances of the child or the parties. "A material change in circumstances means important new facts that were unknown at the time of a prior custodial decree." *Schroeder*, 2014 ND 106, ¶ 7 (cleaned up). "To warrant modification, the material change in

4

circumstances must adversely affect the child or result in a general decline in the child's condition." *Anderson v. Spitzer*, 2022 ND 110, ¶ 7, 974 N.W.2d 695. "Whether an alleged change in circumstance is material depends upon the particularities of a given case." *Kerzmann*, 2021 ND 183, ¶ 10 (cleaned up).

[¶13] Based on our de novo review of Pennington's motion and supporting affidavits and exhibits, we conclude the district court did not err in concluding Pennington "failed to demonstrate a prima facie case" because she did not "show a material change in circumstances that has adversely affected the children or that has result[ed] in a general decline of their condition."

[¶14] Pennington's argument Weber failed to fulfil his obligations as the primary caretaker is unavailing. "Parents have a mutual duty to support their children. N.D.C.C. § 14-09-08. This duty exists regardless of one parent's ability to provide for all of the needs of the child." *Scherling v. Scherling*, 529 N.W.2d 879, 882 (N.D. 1995).

[¶15] The judgment Pennington seeks to modify specifies that both she and Weber have equal and shared decision making responsibility. These shared and equal rights, duties, and responsibilities were not limited to when one parent or the other had parenting time. Specifically, the judgment provides:

> "¶ 11 **JOINT CHILDREN**. The parties have two (2) minor children, namely: *BBW*, born in 2017; and *HGW*, born in 2018. They shall share decision making responsibility as well as residential responsibility of the children[.]
>
> ¶ 12 **PARENTAL RIGHTS AND RESPONSIBILITIES**. The parties shall share equally in the following parental rights, duties, and responsibilities surrounding their minor children.
>
> a. Day-to-Day Decisions. Each parent is authorized to make decisions regarding the day-to-day care and control of the children while the children reside with that parent.

5

b.   <u>Emergency Medical Decisions</u>. Each parent is authorized to make emergency health care decisions while the children are in that parent's care. Each parent shall notify the other of any medical emergencies, serious accidents, or serious illnesses of the child as soon as reasonably possible. The parent shall provide a description of the emergency/accident/illness, the time of the incident, and the name and location of the treating health care provider. If the child is taking medication(s), the parents shall communicate regarding instructions, dosage, and related information.

c.   <u>Rights, Duties, and Responsibilities</u>. The parties shall share the following rights, duties, and responsibilities of the minor children.

   i.   Right to access and obtain copies of the children's educational, daycare, medical, dental, religious, insurance, and other records or information. Each parent must communicate information not readily available online with the other parent with regard to grade reports, extra-curricular activities, and any other notices from the daycare, the school and related entities concerning the child. The children's daycare and school(s) must be notified of the split households and advised to send copies of the children's documents, notices, and related information to each parent. Both parents retain the right and shall notify and authorize the daycare, school, medical providers, and other professionals to communicate directly with and outside the presence of the other parent.

   ii.   Right to be listed as the children's parent and as an emergency contact with the daycare, school, and all health professionals unless directed by court order to the contrary.

6

iii.  Right to attend educational conferences concerning the children. This right does not require any school to hold separate conferences with each parent.

iv.  Right to attend medical appointments concerning the children.

v.  The parent who has medical insurance coverage concerning the children shall supply to the other parent an insurance card and, as applicable, insurance forms and a list of insurer-approved or HMO qualified health care providers in the area where the other parent is residing.

vi.  Right to reasonable access to and communication with the children by written, telephonic, and other electronic means for reasonable durations during the other party's parenting time considering [the children's] age.

vii.  Duty to immediately inform the other parent of a change in residential telephone number, address, emergency contact information, and the name and relationship to them of any person with whom the parent and children permanently resides.

viii.  Duty to keep the other parent informed of the name and address of the school or daycare facility that the children are attending.

ix.  Duty to inform the other parent of significant achievements by the children.

x.  Duty to inform the other parent of legal or significant behavioral problems of their children.

xi. Each party shall use their best efforts to foster a healthy, active, and loving relationship between their children and the other, and shall do no act and say no word intended or designed to minimize the child's affection for the other parent.

¶ 13 **DECISION-MAKING RESPONSIBILITY**. The parties shall be awarded joint legal decision-making responsibility of the minor children.

¶ 14 **RESIDENTIAL RESPONSIBILITY**. Casey shall be awarded primary residential responsibility of the minor children. Casey's home shall be considered the legal residence of the minor children for school enrollment and attendance purposes."

[¶16] Regarding Pennington's claims Weber failed to provide for the children's medical needs, her motion ignores that the parties had identical parenting duties except for "day-to-day care and control of the children while the children reside with that parent." Pennington does not complain about day-to-day parenting decisions. Her motion is based on Weber's alleged failure to provide for the children's medical care, including not scheduling a medical appointment and arranging for a surgery. The only exception to the parents' shared parenting responsibilities is for medically-related emergencies. However, Pennington's complaints here were not related to medical emergencies, but for claims Weber does not provide for the children's basic medical needs.

[¶17] While the complaints lodged by Pennington certainly speak to problems Weber and Pennington have in co-parenting their children, the current judgment makes clear that both Pennington and Weber have and had legal responsibility for doing what Pennington claims Weber failed to do. Moreover, that Pennington assists in providing some or most of the medical care for the children does not show the children are being adversely affected or that there is a decline in their condition amounting to a material change of circumstances warranting a change in primary residential responsibility. *See Gomm v. Winterfeldt*, 2022 ND 172, ¶ 32, 980 N.W.2d 204 (concluding mother failed to establish a prima facie case when

there was no evidence the medical issue was attributable to the current allocation of primary residential responsibility); *see also Anderson v. Pedie*, 2022 ND 19, ¶ 8, 969 N.W.2d 459 (concluding mother did not establish a prima facie case the father was endangering the child's physical or emotional health or impairing the child's emotional development when the evidence did not show the child's alleged medical issues were attributable to the father's inaction).

2

[¶18] Pennington alleges Weber has not kept her up to date with the children's school and activities. She alleges she was unaware H.G.W. was enrolled in dance and only learned of this from a note left in the child's backpack. Also, Pennington asserts she did not know B.B.W. was crown carrier for homecoming and learned of this from a teacher.

[¶19] Pennington also alleges during B.B.W.'s school conference, she learned B.B.W. was behind in reading and was given extra reading to catch up. She asserts she was unaware B.B.W. was behind until the conference. She further alleges Weber claimed he did not know about B.B.W.'s falling behind in school even though he took the children to school every day and saw their homework. According to Pennington, she worked with B.B.W. over the summer to help him catch up on reading.

[¶20] We do not condone one parent not keeping the other parent informed about their children's school and activities. However, Pennington only alleges two incidents where she indirectly learned of the children's school activities or events. Pennington did not provide evidence that B.B.W. was behind in reading due to Weber having primary residential responsibility. Pennington also provided no facts indicating the children were adversely affected by those two incidents. *See Klundt*, 2021 ND 149, ¶ 12 (concluding mother did not demonstrate modification of primary residential responsibility is necessary when she showed one instance of the child having a hard time at school and did not otherwise establish the father failed to meet the child's educational needs). We also note that not directly learning of a child's event is very different than other events this

9

Court has recognized as a material change of circumstances, such as a parent repeatedly interfering with or frustrating the other parent's parenting time. *See Canerdy v. Canerdy*, 2022 ND 61, ¶ 16, 971 N.W.2d 873 ("While frustration of parenting time may not always be enough to ultimately modify primary residential responsibility, the evidence presented to the district court was sufficient to establish a prima facie case justifying modification and warranting an evidentiary hearing."); *see also Sweeney v. Kirby*, 2013 ND 9, ¶ 8, 826 N.W.2d 330 (reversing and ordering an evidentiary hearing because the movant "presented a prima facie case for modification based on interference with parenting time").

3

[¶21] Pennington asserts the children spend considerable time with Weber's mother and she provides most of the children's care while in Weber's custody. Pennington alleges that over the winter, Weber did not pick up the children during exchanges. Instead, Weber's mother would pick up the children. She alleges the children would cry and beg to stay with her during exchanges.

[¶22] First, we take it as given that extended family members may be involved in caring for children, and that a working parent may need assistance from others to care for younger children like those in this matter. In fact, the statutory best interest factors recognize the importance of family and community. *See* N.D.C.C. § 14-09-06.2(1)(d) (considering "the impact of extended family" and "the desirability of maintaining continuity in the child's home and community").

[¶23] Second, Pennington has not demonstrated the children are adversely affected because Weber's mother provides care for them. *Cf. Sweeney v. Kirby*, 2015 ND 148, ¶ 18, 864 N.W.2d 464 (a parent's unavailability to parent is not a material change of circumstance when the child "was in excellent physical and emotional health, and there was no evidence the child is in an unsafe environment" while in significant other's care).

[¶24] Third, Pennington averred in her affidavit in support of the motion to change primary residential responsibility that, "The children are my number one priority, and I was always responsible for their daily needs and schedules while Casey worked. Nothing has changed—despite the modification of custody." She also stated:

> "Throughout this case the children have been an afterthought for Casey—nothing has changed. This case is not about Casey's relationship with the children. This is a matter of Casey winning and punishing me.

> "Casey is a farmer. He has always been a farmer. I understand the demands of his job and he takes those demands seriously. I commend him for that. He has made farming his priority. That is great—that is his choice. He has picked his priorities, and unfortunately the children are not at the top of list. This does not mean that I do not believe that he loves the children. I know he does. I also know that they love him. It simply means that he continues to prioritize his job over the children—and that is not in the children's best interests."

The prima facie case of a material change of circumstances require *new* facts arising since the last order. By Pennington's admission, many of her complaints and claims here are not new but iterations that "nothing has changed."

[¶25] Under our de novo standard of review, we conclude the record is insufficient to establish a prima facie case that there has been a material change in circumstances.

C

[¶26] Pennington claims the district court applied an incorrect legal standard when considering her motion to change primary residential responsibility.

[¶27] Quoting *Anderson v. Spitzer*, 2022 ND 110, ¶ 7, the district court correctly stated, "To warrant modification, the material change in circumstances must adversely affect the child or result in a general decline in the child's condition."

The court later concluded, "Pennington has failed to show a material change in circumstances that has adversely affected the children or that has result[ed] in a general decline of their condition." However, in its analysis, the court wrote, "Her supporting affidavits do not include evidentiary facts to support her conclusion that the children are 'suffering.'" Based on that statement, Pennington argues the district court appeared to base its decision she "did not make her prima facie case in support of modification because she did not adequately prove that the children were 'suffering.'" This Court does not understand the district court's statement as requiring the affidavits to provide evidence the children are "suffering." Rather, the court's statement is in response to Pennington's assertion in her district court brief, referenced earlier in the court's order, that "[t]he children are suffering[.]"

[¶28] To be clear, the standard for determining whether there is a material change in circumstances is whether the change in circumstances has "adversely affected" the children or resulted in a general decline of their condition. Under this standard, a child need not "suffer" for there to be a material change of circumstances.

[¶29] We recently have explained the movant's burden of showing a material change of circumstances. "Our decisions in *Ehli* [*v. Joyce,* 2010 ND 199, 789 N.W.2d 560] and *Ritter* [*v. Ritter*, 2016 ND 16, 873 N.W.2d 899] did not eliminate the need for a party seeking to change primary residential responsibility to establish both a material change in circumstances and either a general decline in the condition of the child or that the change has adversely affected the child. *Kunz v. Slappy*, 2021 ND 186, ¶ 26, 965 N.W.2d 408. "Our decision in *Johnshoy* [*v. Johnshoy*, 2021 ND 108, 961 N.W.2d 282] confirms the continued need to satisfy both subpart (a) and subpart (b) of N.D.C.C. § 14-09-06.6(6)." *Id*. These requirements, and not a child actually "suffering," are the legal standard for establishing a prima facie case of a material change of circumstances necessitating the change in primary residential responsibility.

[¶30] The district court correctly identified the standard for determining whether there was a material change in circumstances and made its conclusion

12

under that standard. The court did not misapply the law when determining whether Pennington met her burden of establishing a prima facie case.

## III

[¶31] We have considered the remaining arguments and conclude they are either unnecessary to our decision or without merit. The district court did not err in denying Pennington's motion to modify residential responsibility because Pennington did not establish a prima facie case justifying modification. The court's order finding Pennington did not establish a prima facie case entitling her to an evidentiary hearing is affirmed.

[¶32] Jon J. Jensen, C.J.
Daniel J. Crothers
Jerod E. Tufte

**Bahr, Justice, dissenting.**

[¶33] I respectfully dissent from part II(B)(1) of the majority decision. I would reverse the district court's order and remand to the district court to determine whether Pennington established a prima facie case under N.D.C.C. § 14-09-06.6(6)(b).

## A

[¶34] In its order denying Pennington's motion, the district court stated:

> [Pennington's] supporting affidavits do not include evidentiary facts to support her conclusion that the children are "suffering." Rather, the affidavits demonstrate the children are continuing to receive medical care, dental care, and their school supplies— although she desires for Weber to make those arrangements, instead of her.

The court concluded, "Pennington has failed to show a material change in circumstances that has adversely affected the children or that has result[ed] in a general decline of their condition." Significantly, the court did not conclude there

13

was not a change in circumstances; rather, it concluded Pennington did not show the changed circumstances adversely affected the children or resulted in a general decline of their condition.

[¶35] Although the district court correctly cited the standard for determining a material change of circumstances, I would conclude the court misapplied the law by unduly focusing on the children's current condition—that the affidavits do not show the children are "suffering"—rather than the past harm and the potential harm due to Weber's alleged neglect.

[¶36] Pennington's primary allegation is Weber is neglecting the children by not providing for their basic medical needs. Pennington asserts that when H.G.W. continued to have sore throats, Weber failed to schedule an appointment for H.G.W. to see a doctor, and the responsibility fell on her to arrange an appointment. According to Pennington, after learning H.G.W. needed surgery to have her tonsils removed, Pennington scheduled the surgery because Weber failed to do so. Pennington also took care of H.G.W. following the surgery. Pennington also alleges Weber did not maintain the children's dental care, so the children now receive dental care closer to her. Because Weber will not do so, Pennington asserts she provides for all the children's medical care, including scheduling and taking them to their appointments.

[¶37] Although the district court concluded Pennington did not present evidence "the children are 'suffering,'" she did present evidence H.G.W. suffered due to Weber's alleged neglect. She asserted H.G.W., while in preschool and primarily in Weber's care ("26 days a month"), "was frequently sick and continued to have sore throats—one after another." Pennington asserted this "was an ongoing issue" but Weber would not take H.G.W. to the doctor "even though she was always sick." After Pennington scheduled an appointment, the specialist determined H.G.W. needed to have her tonsils removed, which Pennington arranged because Weber would not. Thus, Pennington alleged H.G.W. suffered, or was "adversely affected," because she had to endure "ongoing sore throats" due to Weber's neglect.

14

[¶38] Moreover, the standard is not whether the children are "suffering" or have suffered; the standard is whether Weber's alleged neglect of the children could potentially cause them physical or emotional harm. "Our prior cases indicate that allegations showing *potential* endangerment to the children's physical or mental health constitutes a significant change of circumstances which will raise a prima facie case for a modification of custody and entitlement to an evidentiary hearing." *Volz v. Peterson*, 2003 ND 139, ¶ 10, 667 N.W.2d 637 (emphasis added). "We have previously held allegations of neglect, if true, constitute a material change of circumstances." *Tank v. Tank*, 2004 ND 15, ¶ 25, 673 N.W.2d 622.

[¶39] In *Tank*, the non-custodial parent moved for modification of custody. 2004 ND 15, ¶ 3. Relevant to this case, the non-custodial parent alleged the custodial parent "failed to adequately care for the children[.]" *Id*. ¶ 21.[1] The non-custodial parent described instances where the custodial parent failed to keep a current adrenaline injector for the younger child's peanut allergy; did not take the children to the doctor; and neglected the younger child's hygiene. *Id*. ¶¶ 22, 24-25. The district court determined "the children appeared to be in a generally safe and stable environment and found no evidence of neglect." *Id.* ¶ 4. Reversing, this Court explained, "Allegations showing *potential endangerment* to the children's physical or mental health constitute a significant change of circumstances, raising a prima facie case for modification of custody and entitlement to an evidentiary hearing." *Id.* ¶ 10 (emphasis added). Addressing the specific allegations, we concluded the "affidavits suggest [the custodial parent's] care of the children *could potentially* cause emotional or physical harm." *Id*. ¶ 31 (emphasis added). "The allegations," we continued, "each show *potential endangerment* to the children, demonstrating a material change in circumstances and requiring further review at an evidentiary hearing." *Id*. (emphasis added).

---

[1] The non-custodial parent also moved for modification on the grounds the children expressed their preference to live with her and the custodial parent's consistent denial and interference in her visitation rights. *Tank*, 2004 ND 15, ¶¶ 13, 17. This Court concluded the non-custodial parent was entitled to a hearing on both of those allegations. *Id.* ¶¶ 14-16, 18-20.

15

[¶40] We reversed the district court's denial of an evidentiary hearing in *Kerzmann v. Kerzmann*, 2021 ND 183, 965 N.W.2d 427. There, the non-custodial parent alleged, among other things, that the "dental care for the children had been neglected" and the custodial parent had "not attended to the children's developmental needs[.]" *Id.* ¶¶ 3, 14. We noted the non-custodial parent "described problems with the children's dental care" and how the custodial parent "failed to follow-through with counseling" for one of the children. *Id.* ¶ 14. The opinion did not discuss whether the lack of dental care adversely affected the children's teeth or caused a decline in their dental condition. It also did not discuss how the child was harmed by the lack of counseling. Rather, we stated, "The affidavit is sufficient to provide a prima facie showing the children *may be* adversely affected." *Id.* ¶ 16 (emphasis added).

[¶41] In *Volz*, we reversed the district court's denial of a motion to modify a judgment and remanded for an evidentiary hearing. 2003 ND 139, ¶ 16. We stated, "An allegation that a fifteen-year-old is being exposed to drugs and cigarettes in one parent's home and is sneaking out of the house undetected by the parents would show *potential* physical and mental harm to the children." *Id.* ¶ 10 (emphasis added).

[¶42] "A material change of circumstances can occur if a child's present environment *may endanger* the child's physical or emotional health or impair the child's emotional development." *McCay v. McCay*, 2024 ND 130, ¶ 6, 9 N.W.3d 687 (emphasis added). Pennington's affidavits provide enough facts to permit a factfinder to infer Weber's alleged lack of appropriate care for the children during periods when the children were in his care could potentially cause them physical harm. That the children are not currently "suffering" is not the standard.

[¶43] The district court appeared to give weight to the fact the children were not left without care altogether due to Pennington's involvement. Despite Weber having primary residential responsibility of the children, Pennington has a mutual duty to support their children. N.D.C.C. § 14-09-08 ("Parents shall give their children support and education suitable to the child's circumstances.").

16

Parents cannot ignore their duty to support their children simply because the other parent has primary residential responsibility. *See Matter of James R.*, 663 N.Y.S.2d 760, 761 (Fam. Ct. 1997) (finding neglect by non-custodial father because he "had an obligation to provide for the care and custody of his child when the custodial parent (mother) failed to act in the child's best interest thereby endangering the child"); *In re N.H.*, 2001 ND 143, ¶ 17, 632 N.W.2d 451 (stating "parents must provide care that satisfies minimum community standards"); *cf. In re B.C.*, 582 A.2d 1196, 1199 (D.C. 1990) ("A child is still deprived whether an absent parent allows the child to be deprived or whether a custodial parent deprives the child."); *Matter of Adoption of J.J.B.*, 868 P.2d 1256, 1263 (N.M. 1993) (explaining a non-custodial parent can be responsible for the neglect of the custodial parent if the non-custodial parent knew or should have known of the child's condition); *Matter of C.P.*, 711 P.2d 894, 899 (N.M. Ct. App. 1985) ("A father may not delegate parental obligations to the mother and be held harmless when she neglects these obligations."). In addition to Pennington's statutory duty to provide care for the children, as noted by the majority, the amended judgment provides Pennington and Weber share decision-making responsibility and residential responsibility of the children. Majority, ¶ 15.

[¶44] Although Weber and Pennington have a mutual duty to provide care for their children, during the school year Weber has residential responsibility of the children except for two weekends per month. Thus, during the school year he is the parent providing care for the children on a day-to-day basis, including providing for their medical needs. *See Stout v. Stout*, 1997 ND 61, ¶ 29, 560 N.W.2d 903 ("The fact remains that ordinarily the day-to-day routine of the children, especially young ones, and the quality of their environment and their general style of life are that which are provided by the custodial parent and which are, indeed, the custodial parent's obligation to provide." (quoting *D'Onofrio v. D'Onofrio,* 144 N.J. Super. 200, 205-06, 365 A.2d 27 (Ch. Div. 1976))). If he is neglecting to provide that care, as alleged by Pennington, "the children may be adversely affected." *Kerzmann*, 2021 ND 183, ¶ 16. By discounting Weber's alleged neglect because Pennington arranged for or provided care for the children, the district court shifted the inquiry away from whether Weber's

17

alleged conduct *could* potentially cause harm to the children. In *Tank*, the non-custodial parent alleged the custodial parent "does not take the children to the doctor when necessary. Rather, she must take them." 2004 ND 15, ¶ 24. We concluded the non-custodial parent established a prima facie case notwithstanding the children received appropriate medical care due to the non-custodial parent's actions. That is because "[a]llegations, supported by affidavit, demonstrating a custodial environment that may be endangering the children's physical or mental health, are sufficient to raise a prima facie case for change of custody, entitling the movant to an evidentiary hearing." *Id.* ¶ 21.

[¶45] The majority states "Pennington does not complain about day-to-day parenting decisions." Majority, ¶ 16. However, Pennington alleges, despite H.G.W. always being sick, despite her sore throat being "an ongoing issue," despite her having "sore throats—one after another," Weber did nothing. Weber's alleged failure to take any action regarding H.G.W.'s "ongoing sore throats" while she was in his care is a complaint about Weber's day-to-day parenting decisions. As is the allegation he would not provide appropriate care for H.G.W. when the specialist determined H.G.W. needed to have her tonsils removed. The fact Weber and Pennington have a mutual duty to provide care for their children does not absolve Weber of his duty to provide appropriate day-to-day care of the children while they reside with him, as suggested by the majority's opinion.

[¶46] The majority's reliance on *Gomm v. Winterfeldt*, 2022 ND 172, 980 N.W.2d 204, and *Anderson v. Pedie*, 2022 ND 19, 969 N.W.2d 459, is misplaced. First, *Gomm* was decided under N.D.C.C. § 14-09-06.6(6)(b), not N.D.C.C. § 14-09-06.6(6)(a), Gomm conceding there had been a material change in circumstances. *Gomm*, ¶ 32. Here, the district court did not address section 14-09-06.6(6)(b). Second, in *Gomm*, there was no evidence the child's single incident of having genital pain was attributable to the "allocation of primary residential responsibility." *Id.* Here, the alleged neglect occurred when and because the children were in Weber's care. Similarly, in *Anderson* we concluded the evidence did not show the father caused or contributed to the child's alleged medical issues. 2022 ND 19,

¶ 8. Here, Pennington alleges, among other things, that H.G.W. had to endure "ongoing sore throats" due to Weber's neglect. Thus, unlike in *Gomm* and *Anderson*, Pennington's allegations directly relate to the allocation of primary residential responsibility.

[¶47] Pennington's affidavits allege Weber's care of the children has and could potentially cause physical harm to them. I would conclude Pennington's affidavits make sufficient allegations of neglect to establish a prima facie case under N.D.C.C. § 14-09-06.6(6)(a).

B

[¶48] Before modifying primary residential responsibility, N.D.C.C. § 14-09-06.6(6)(b) requires the court find the modification be "necessary to serve the best interests of the child." A court considering whether a moving party has met a prima facie burden under N.D.C.C. § 14-09-06.6(6)(b) must consider the applicable N.D.C.C. § 14-09-06.2(1) factors. "To satisfy the best interests, the moving party must demonstrate a 'factual showing that *could* justify a finding for the moving party that could be affirmed on appeal.'" *Kerzmann*, 2021 ND 183, ¶ 13 (quoting *Solwey v. Solwey*, 2016 ND 246, ¶ 20, 888 N.W.2d 756) (emphasis in original). "This is not the time for the district court to judge whether it *would* decide the best-interest factors in favor of the moving party." *Id*. (quoting *Solwey*, ¶ 20) (emphasis in original); *see also Tank*, 2004 ND 15, ¶ 12 ("A prima facie case does not require facts which, if proved, would mandate a change of custody as a matter of law. A prima facie case only requires facts which, if proved at an evidentiary hearing, would support a change of custody that could be affirmed if appealed.").

[¶49] Because the district court denied Pennington's motion under N.D.C.C. § 14-09-06.6(6)(a), it did not address whether the allegations could justify a finding modification would serve the best interests of the children under N.D.C.C. § 14-09-06.6(6)(b). I would remand to the district court to determine whether Pennington made a prima facie case under section 14-09-06.6(6)(b) and, if it concluded she did, to hold an evidentiary hearing.

C

[¶50] Although I express no opinion on the merits of Pennington's allegations, I would conclude Pennington presented, through supporting affidavits, sufficient facts to establish a prima facie case under N.D.C.C. § 14-09-06.6(6)(a). I would remand to the district court to determine whether Pennington made a prima facie case under N.D.C.C. § 14-09-06.6(6)(b).

[¶51]  Lisa Fair McEvers
      Douglas A. Bahr