# IN THE SUPREME COURT
## STATE OF NORTH DAKOTA

2026 ND 10

Ashley Marie Cull,                 Plaintiff and Appellant

v.

Andrew James Cull,              Defendant and Appellee

No. 20250303

Appeal from the District Court of Pembina County, Northeast Judicial District, the Honorable Barbara L. Whelan, Judge.

AFFIRMED.

Opinion of the Court by Bahr, Justice.

Jacey L. Johnston and Blayze Fisher, under the Rule on Limited Practice of Law by Law Students, Grand Forks, ND, for plaintiff and appellant; on brief.

Patti J. Jensen, East Grand Forks, MN, for defendant and appellee; on brief.

**Bahr, Justice.**

[¶1]   Ashley Cull appeals the district court order denying her motion to award her primary residential responsibility of the parties' two minor children, K.J.C. and R.R.C. She argues the court erred in concluding she did not establish a prima facie case entitling her to an evidentiary hearing. We affirm the court's order denying Ashley Cull's motion to modify primary residential responsibility.

I

[¶2]   Ashley Cull and Andrew Cull were married in October 2013. The parties have two children together: K.J.C., born in 2016, and R.R.C., born in 2019. In June 2021, Ashley Cull initiated a divorce action. The district court entered a stipulated judgment of divorce in January 2022. In March 2022, the court entered an amended judgment. Andrew Cull was awarded primary residential responsibility in both judgments.

[¶3]   In February 2025, Ashley Cull filed a motion to modify primary residential responsibility under N.D.C.C. § 14-09-06.6. She filed two supporting declarations, her declaration and her parents' joint declaration. Andrew Cull responded to the motion, filing fourteen declarations.

[¶4]   In June 2025, the district court issued an order denying the motion. The court concluded Ashley Cull failed to establish a prima facie case under N.D.C.C. § 14-09-06.6 because "there has been no material change in circumstances of the children or parties, and . . . modification of the existing primary residential responsibility determination is not necessary to serve the best interests of the children."

II

[¶5]   Ashley Cull argues she is entitled to an evidentiary hearing because she established a prima facie case for modification of primary residential responsibility under N.D.C.C. § 14-09-06.6. She asserts she supported her motion

1

with competent, firsthand sworn statements, exhibits, and school records that show Andrew Cull delegates parenting responsibility to his mother, making her the children's primary caregiver; there is a "lack of consistent routine and structure" in Andrew Cull's home, and he has "limited engagement with the children's schooling," adversely impacting the children's behavior and academic performance; Andrew Cull made "unsafe parenting decisions that placed the children at risk"; and other grounds justifying modification.

## A

[¶6] A district court may modify primary residential responsibility under N.D.C.C. § 14-09-06.6. "When a party seeks modification of primary residential responsibility two years after entry of the prior order establishing primary residential responsibility, the party must establish a prima facie case justifying modification." *Weber v. Pennington*, 2025 ND 105, ¶ 7, 22 N.W.3d 726; *see also* N.D.C.C. § 14-09-06.6. The court considers the motion on briefs without oral argument or an evidentiary hearing, and must deny the motion unless it finds the moving party established a prima facie case justifying the modification. N.D.C.C. § 14-09-06.6(4). The moving party is entitled to an evidentiary hearing only if the court finds the party established a prima facie case justifying modification. *Weber*, ¶ 8.

[¶7] A party seeking modification of primary residential responsibility establishes a prima facie case by showing: (1) based on facts that have arisen since the prior order, which were unknown to the court at the time of the prior order, a material change has occurred in the circumstances of the child or the parties; and (2) the modification is necessary to serve the best interest of the child. N.D.C.C. § 14-09-06.6(6). "To warrant modification, the material change in circumstances must adversely affect the child or result in a general decline in the child's condition." *Weber*, 2025 ND 105, ¶ 12 (quoting *Anderson v. Spitzer*, 2022 ND 110, ¶ 7, 974 N.W.2d 695). "Whether an alleged change in circumstance is material depends upon the particularities of a given case." *Id.* (quoting *Kerzmann v. Kerzmann*, 2021 ND 183, ¶ 10, 965 N.W.2d 427).

[¶8] We have explained:

[A] prima facie case requires only enough evidence to permit a factfinder to infer the fact at issue and rule in the moving party's favor. A prima facie case is a bare minimum and requires facts which, if proved at an evidentiary hearing, would support a change of custody that could be affirmed if appealed. Allegations alone do not establish a prima facie case, and affidavits supporting the motion for modification must include competent information, which usually requires the affiant have first-hand knowledge. Affidavits are not competent if they fail to show a basis for actual personal knowledge, or if they state conclusions without the support of evidentiary facts.

*Weber*, 2025 ND 105, ¶ 8 (quoting *Kerzmann*, 2021 ND 183, ¶ 8). "A district court may conclude the moving party failed to establish a prima facie case only if the opposing party presents counter affidavits conclusively establishing the allegations of the moving party have no credibility, or if the movant's allegations are insufficient, on their face, to justify custody modification." *Id.* "Whether a party has established a prima facie case for a change of primary residential responsibility is a question of law which we review de novo." *Id.* (quoting *Jensen v. Jensen*, 2023 ND 22, ¶ 3, 985 N.W.2d 679).

[¶9] "The purpose of the prima facie case requirement is to avoid holding modification hearings based on mere allegations alone. The statutory procedure allows the district court to eliminate unsupported or frivolous cases without imposing upon the court and the parties the burden and expense of an unnecessary evidentiary hearing." *Weber*, 2025 ND 105, ¶ 7 (cleaned up).

B

[¶10] Ashley Cull argues the district court misapplied the standard to establish a prima facie case. She asserts the court did not accept her sworn declarations, instead weighing the evidence, dismissing her evidence as "anecdotal," and improperly crediting Andrew Cull's rebuttal affidavits.

[¶11] In discussing Ashley Cull's allegations, the district court noted some of the allegations were not based on firsthand knowledge or were not competent information. For example, the court explained some of the statements by Ashley Cull's parents were based on what they "claim to have been told by others,"

3

"what they were told," and what they "report the children have told them[.]" The court further noted Ashley Cull refers to what "family members and community members have observed" and what an "acquaintance of the parties observed[.]" The declarations also often do not indicate what statements purport to be based on personal knowledge, using language like we "witnessed firsthand and been told" and we are "aware." Ashley Cull makes assertions regarding Andrew Cull's parenting, vaguely stating "[t]his has been witnessed by myself, my family and members of the community." At other times, the court notes Ashley Cull presented "no evidence" supporting certain allegations, did not provide "supporting documentation," and that certain claims are not substantiated.

[¶12] The district court did not err by not considering the declarations to the extent they do not include competent information and are not based on firsthand knowledge. "Mere allegations are not enough to establish a prima facie case." *Carvalho v. Carvalho*, 2025 ND 129, ¶ 10, 23 N.W.3d 890. And declarations "are not competent if they fail to show a basis for actual personal knowledge, or if they state conclusions without the support of evidentiary facts." *Kerzmann*, 2021 ND 183, ¶ 8 (quoting *Klundt v. Benjamin*, 2021 ND 149, ¶ 6, 963 N.W.2d 278).

C

1

[¶13] Ashley Cull argues Andrew Cull's occupation as a farmer severely restricts his capacity to provide consistent care and routine for their children, resulting in Andrew Cull delegating his role as the primary parent to his mother.

[¶14] The district court concluded Andrew Cull's "occupation as a farmer was known to the Court at the time of the original and amended Judgments and therefore does not, in itself, constitute a change in circumstances." The court then addressed the allegation Andrew Cull's mother is the primary caregiver of the children. It stated that, although some statements in the declarations are based on what the declarants "personally observed," others are based on what the declarants were told. And many parts of the declarations fail to show whether the statements are based on the declarant's personal knowledge. The court noted

4

the statements "provide minimal firsthand knowledge of what occurs during Andrew's parenting time[,]" do not provide details, and do not provide evidence Andrew Cull was not providing care "during the majority of his parenting time." The court then discussed this Court's decision in *Weber*, 2025 ND 105, ¶ 22, where this Court stated "we take it as given that extended family members may be involved in caring for children, and that a working parent may need assistance from others to care for younger children like those in this matter. In fact, the statutory best interest factors recognize the importance of family and community." *Id.* The court further explained this Court "held the use of extended family members for childcare does not amount to a material change in circumstances unless it can be shown the arrangement has a detrimental effect on the children." The court stated Ashley Cull "presented no evidence" showing Andrew Cull's mother's involvement during Andrew Cull's parenting time "has resulted in instability, neglect, harm, or unmet needs." The court concluded:

> Under *Weber v. Pennington*, the assistance of extended family does not constitute a material change in circumstances absent a showing of harm or adverse impact on the children, something Ashley has not demonstrated. Accordingly, this ground does not support modification. Further, Andrew's occupation as a farmer requires no further analysis, as it remains unchanged since the entry of the original and amended Judgments.

[¶15] Extended family involvement in childcare is both common and statutorily favored when a working parent requires support. Ashley Call did not present competent evidence Andrew Cull's mother's assistance in caring for the children has an adverse effect on the children. Moreover, Andrew Cull's occupation as a farmer is not a new fact; it was known to the district court at the time of the original judgment. The demanding nature of farming, including long and inconsistent hours, was contemplated by the court when it awarded Andrew Cull primary residential responsibility. Because these facts existed at the time of the prior order, they cannot now serve as the basis for establishing a material change in circumstances.

[¶16] Based on our de novo review of the record, considering only the competent information presented, Ashley Cull did not meet her burden of establishing a

5

material change of circumstances due to Andrew Cull's occupation as a farmer and his mother assisting with the care of the children.

2

[¶17] Ashley Cull asserts "[b]oth children are experiencing behavioral and academic challenges in school." She alleges this is because during Andrew Cull's parenting time the children lack "the essential structure and daily routine necessary for their ages"; "[t]here is too much electronic time, television time, and access to YouTube at Andrew's"; Andrew Cull's participation in addressing the school issues has been limited; and Andrew Cull's failure to prioritize homework assistance and appropriate bedtimes.

[¶18] Andrew Cull acknowledged, and the district court accepted the allegation, the children are facing behavioral and academic challenges at school. However, the court concluded Ashley Cull did not present competent evidence regarding Andrew Cull's parenting and the structure in his home or that the children are being negatively impacted by Andrew Cull's parenting time.

[¶19] Ashley Cull did not show the basis for most of her assertions regarding what occurs during Andrew Cull's parenting time. "Allegations alone do not establish a prima facie case, and affidavits supporting the motion for modification must include competent information, which usually requires the affiant have first-hand knowledge." *Weber*, 2025 ND 105, ¶ 8 (quoting *Kerzmann*, 2021 ND 183, ¶ 8). She also provides no competent evidence establishing a causal connection between the children's behavioral and academic issues and Andrew Cull's parenting, merely alleging without support these problems stem from his parenting style. *See Weber*, ¶ 20 ("Pennington did not provide evidence that B.B.W. was behind in reading due to Weber having primary residential responsibility.").

[¶20] Based on our de novo review of the record, considering only the competent information presented, Ashley Cull did not meet her burden of establishing a material change of circumstances due to the children's behavioral and academic difficulties.

[¶21] Ashley Cull alleges Andrew Cull endangered the children's safety on January 22, 2025. She asserts no one arrived to pick the children up from church school, causing them to walk in subzero temperatures to Andrew Cull's mother's house. She states an acquaintance observed the children, picked them up, and found Andrew's mother's house locked with no one home. She emphasizes the children could have gotten frostbite or worse, and states Andrew Cull does not seem to understand the danger he put the children in.

[¶22] "A material change of circumstances can occur if a child's present environment may endanger the child's physical or emotional health or impair the child's emotional development." *McCay v. McCay*, 2024 ND 130, ¶ 6, 9 N.W.3d 687. Our prior cases indicate competent information showing potential endangerment to a child's physical or mental health may constitute a significant change of circumstances which will raise a prima facie case for a modification of custody and entitlement to an evidentiary hearing. *See Kerzmann*, 2021 ND 183, ¶ 16 (holding an affidavit including descriptions of the other parent frustrating the movant's parenting time, failing to facilitate a relationship between the children and the movant, "failing to follow through with recommended counseling for the children, and failing to provide adequate dental care for the children . . . is sufficient to provide a prima facie showing the children may be adversely affected"); *Tank v. Tank*, 2004 ND 15, ¶ 31, 673 N.W.2d 622 ("The allegations discussed above each show potential endangerment to the children, demonstrating a material change in circumstances and requiring further review at an evidentiary hearing."); *Volz v. Peterson*, 2003 ND 139, ¶ 10, 667 N.W.2d 637 ("An allegation that a fifteen-year-old is being exposed to drugs and cigarettes in one parent's home and is sneaking out of the house undetected by the parents would show potential physical and mental harm to the children."). However, while potential endangerment may constitute a significant change in circumstances and raise a prima facie case for modification, an isolated incident does not automatically mandate a finding of material change. *See Johnson v. Staiger*, 2025 ND 198, ¶ 16, 27 N.W.3d 692 ("[O]ur cases do not show an isolated incident of a parent driving under the influence automatically mandates a finding of a material change of circumstances.").

[¶23] It is unclear what, if any, firsthand knowledge Ashley Cull has about the January 22, 2025 incident. Andrew Cull submitted declarations based on firsthand knowledge. Based on the competent information presented, the district court concluded "the incident reflects a miscommunication and lack of clear supervision at pickup[.]" The court stated "there is no evidence the children were in immediate danger or that similar situations have occurred frequently." The court further concluded "firsthand statements show the children were safe, warm, and quickly located."

[¶24] The January 22, 2025 incident is an isolated occurrence that does not rise to the level of establishing a prima facie case of material change in circumstances. Even Ashley Cull refers to the incident as "a discrete safety lapse." The record contains no evidence of prior similar incidents, a pattern of endangerment during Andrew Cull's parenting time, or deliberate neglect or a systemic failure in Andrew Cull's care.

[¶25] Based on our de novo review of the record, considering only the competent information presented, Ashley Cull did not meet her burden of establishing the January 22, 2025 incident is a material change of circumstances.

4

[¶26] The district court addressed and rejected Ashley Cull's other assertions why there is a material change of circumstances and modification is necessary to serve the children's best interest. We conducted a de novo review of Ashley Cull's other assertions, including the parties' communication challenges and co-parenting breakdowns, Andrew Cull's refusal to use tools like co-parenting apps, and that there are issues with the Cavalier School District and the children would be better off attending school in Grafton. Based on our de novo review of those issues, considering only the competent information presented, Ashley Cull did not meet her burden of establishing a prima facie case for modification of primary residential responsibility under N.D.C.C. § 14-09-06.6.

## III

[¶27] The district court did not misapply the law when determining Ashley Cull did not meet her burden of establishing a prima facie case for modification of primary residential responsibility under N.D.C.C. § 14-09-06.6. We affirm the court's order denying Ashley Cull's motion to modify primary residential responsibility.

[¶28]  Lisa Fair McEvers, C.J.
  Daniel J. Crothers
  Jerod E. Tufte
  Jon J. Jensen
  Douglas A. Bahr